Vincent BURIN *v.* STATE of Arkansas

CR 88-206                                  770 S.W.2d 125

Supreme Court of Arkansas
Opinion delivered May 15, 1989

612

*F.N. "Buddy" Troxell*, for appellant.

*Steve Clark*, Att'y Gen., by: *Ann Purvis*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The primary issue in this case is whether the appellant's confession should have been suppressed because of his mental subnormality. We affirm the trial court's ruling denying the motion to suppress. We set out the applicable law in some detail, even on points not argued, because there was obvious confusion below about the burden of proof, and the distinction between insanity as a defense and the lack of voluntariness of a confession due to mental subnormality.

## I. The Privilege

██ In *Miranda* v. *Arizona*, 384 U.S. 436, 467 (1966), the Supreme Court recognized that custodial interrogations inherently produce "compelling pressures which work to undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely." To neutralize this inherent compulsion and give true meaning to the Fifth Amendment privilege against self-incrimination, the Court in *Miranda* imposed a clear standard for police to follow in their dealings with an accused. Prior to the initiation of questioning, they must fully apprise the suspect of the state's intention to use his statements to secure a conviction and must inform him of his rights to remain silent and to have counsel present, if he so desires. *Id*. at 468-470. The police must respect the rights guaranteed by the Fifth Amendment. A suspect's waiver of these rights is valid only if it is made "voluntarily, knowingly and intelligently." *Id*. at 444. The inquiry into waiver has two distinct dimensions. *Colorado* v. *Spring*, 479 U.S. 564 (1987); *Moran* v. *Burbine*, 475 U.S. 412, 421 (1986).

### A. Voluntary Waiver of the Privilege

██ "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. This "voluntary" requirement is concerned with any sort of coercive police activity. An incriminating statement obtained on the basis of a waiver must be excluded unless the state establishes the voluntariness of the waiver by the evidentiary standard of a preponderance of the evidence. *Colorado* v. *Connelly*, 479 U.S. 157, 168 (1986). In the case at bar the appellant does not question the voluntariness of his confession. The exclusion of the statement because of police overreaching is not an issue.

### B. Knowing and Intelligent Waiver of the Privilege

██ "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a

court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421. In *Colorado* v. *Spring*, 479 U.S. 564 (1987), the United States Supreme Court wrote:

> The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege. *Moran* v. *Burbine, supra*, 475 U.S. 412, 106 S. Ct., at ___; *Oregon* v. *Elstad, supra*, at 316-317, 105 S. Ct. at 1298. The Fifth Amendment's guarantee is both simpler and more fundamental: A defendant may not be compelled to be a witness against himself in any respect. The *Miranda* warnings protect this privilege by ensuring that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. The *Miranda* warnings ensure that a waiver of these rights is knowing and intelligent by requiring that the suspect be fully advised of this constitutional privilege, including the critical advice that whatever he chooses to say may be used as evidence against him.

In this case the appellant argues that the trial court erred in admitting his confession because: (1) he failed to understand the basic privilege guaranteed by the Fifth Amendment; and (2) he did not understand the consequences of speaking to the police.

## C. Facts of this Case

The prosecuting attorney and appellant's attorney first questioned appellant's competency to stand trial. In response the trial court ordered that the appellant be given a psychiatric evaluation by Dr. James H. Hickman, who found that appellant had some retardation in the borderline to upper mildly retarded range, but was able to conform his behavior to the requirements of the law.

The appellant then filed a motion to suppress the confession because of appellant's mental subnormality. In order to meet its evidentiary burden at the suppression hearing, the State called Charles Fullmer, a deputy sheriff who testified that he spent about forty-five minutes explaining the standard *Miranda* form to the appellant. In his opinion the appellant understood his privilege and waived it. Further, another deputy sheriff, Ollie

Willborg, testified that he knew the accused was not a knowledgeable person, and therefore, he broke down the rights form and took the time to explain each individual right to the appellant. He stated that he tried to get on appellant's level in the explanation of his rights. In his opinion, the appellant understood his rights and their waiver.

The appellant then called Michael Prince, a psychologist who holds a Doctor of Philosophy degree. He testified that the appellant was in the mildly retarded range group, but that his abstract reasoning ability was extremely poor. He testified that the appellant was susceptible to suggestions and he was very gullible. He stated that the appellant could neither read nor understand the following words in the rights form: write, advise, silent, consulting, lawyer, desire, statement, and without. He testified that the appellant could understand only two or three sentences in the waiver of rights form and, in general, neither understood his basic Fifth Amendment privilege nor the consequences of speaking to the police.

At the conclusion of the hearing, the trial judge, having considered the evidence concerning competency to stand trial and the evidence from the suppression hearing, refused to suppress the statement. We cannot say the trial judge's finding was clearly erroneous.

■ A low intelligence quotient will not, in itself, render a waiver of the privilege involuntary. *Hatley* v. *State*, 289 Ark. 130, 709 S.W.2d 812 (1986); *see also* Annotation, *Mental Subnormality of Accused as Affecting Voluntariness or Admissibility of Confession*, 8 A.L.R.4th 16 (1981; Supp. 1988). Other factors to be considered are the defendant's age, experience, education, background, and the length of detention. *Fare* v. *Michael C.*, 442 U.S. 707 (1979), and *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985). Here, the appellant was nineteen years old, in the eleventh grade in a special education class of the local public school, and owned and drove an automobile. He was not held for a prolonged period before the *Miranda* rights were carefully explained to him.

■ The trial judge saw and was in a position to determine the credibility of the witnesses. We are in no position to redetermine that credibility. In *United States* v. *Oregon State Medical*

*Society*, 343 U.S. 326, 339 (1952), the Supreme Court commented on the deference which it gave to the findings of a District Court on direct appeal from a bench trial:

> As was aptly stated by the New York Court of Appeals, although in a case of a rather different substantive nature: Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.

We cannot say the findings of the trial judge were clearly erroneous on the issue of knowingly and intelligently waiving the privilege.

## II. The Prosecutor's Closing Argument

For his second point of appeal, the appellant contends that the prosecutor's closing argument was inflammatory and that the trial judge erred in refusing to grant a mistrial. The argument is without merit. The issue arose in the following manner. During cross-examination of appellant's psychologist, the prosecutor asked if the appellant would be likely to commit sexual abuse in the future. The appellant did not object to the question. The psychologist answered, "yes, I would suppose that if a person were guilty of sexual abuse before, with this profile, with these results, I would have to predict that it would happen again." On re-direct the appellant's counsel asked a similar question, to which the psychologist responded, "If he had done it before, then it would be a fairly safe prediction to say he would do it again." Of course, the State did not object. The appellant's attorney again asked a similar question, and the prosecutor objected. The appellant's attorney asked to strike the question. After both sides had rested, the appellant's attorney moved for a mistrial because of the prosecutor's original question. It was too late. The evidence was already before the jury without objection.

During closing argument the prosecutor commented on these questions and answers. The appellant again moved for a

mistrial. The trial judge refused to grant it. The trial judge's ruling was correct. A prosecutor is allowed to argue any inference reasonably and legitimately deducible from the admitted evidence. *Floyd* v. *State*, 278 Ark. 86, 643 S.W.2d 555 (1982).

Affirmed.

HICKMAN, J., not participating.