Larry BRANSCOMB *v.* STATE of Arkansas

CR 88-214 774 S.W.2d 426

Supreme Court of Arkansas
Opinion delivered July 10, 1989

*Loh, Massey, Yates, Ltd.,* by: *Howard C. Yates,* for appellant.

*Steve Clark,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Larry Branscomb, was convicted of capital murder and sentenced to life in

prison without parole. He raised four points for reversal: (1) the trial court should have permitted him to be examined by a psychiatrist of his choice at state expense; (2) inculpatory statements he made to the police should have been suppressed because, (a) the state violated Ark. R.Crim. P. 8.1 by delaying appearance before a magistrate after his arrest, and (b) he lacked the capacity to waive his Sixth Amendment right to counsel; (3) the court should have admitted into evidence at a preliminary hearing the report of his psychiatric examination at the state hospital; and (4) the court should have instructed on the lesser included offenses of second degree murder and manslaughter.

We affirm the conviction because (1) the state was under no obligation to provide psychiatric examination other than that done at the state hospital; (2) there has been no showing that the delay in bringing Branscomb before a magistrate was unnecessary; (3) there was evidence to support a finding that Branscomb was competent to waive his right to counsel; and (4) a lesser included offense of first degree murder was instructed but the jury found capital murder, thus whatever error there may have been in refusing to instruct on second degree murder and manslaughter was cured.

Thomas Morgan, an elderly resident of Marianna, was robbed and shot to death in his home on August 15, 1986. Larry Branscomb, his brother Earl Branscomb, and Willie McCoy were charged with the crime. Larry Branscomb was visiting in Lee County from Chicago. The three men had, on that same day, looked at a gold colored Cadillac for sale in Marvel. Earl Branscomb and McCoy testified that Larry told them to drop him off in the vicinity of Morgan's home because he knew Morgan had money and he would get it to buy the car. McCoy had seen Larry Branscomb with a pistol the night before. Earl Branscomb testified that Larry Branscomb had said he wanted the car and would "knock somebody off" to get it.

Earl testified that Larry called him later that day and said the man he robbed had gone for his gun and he had had to shoot him and wanted to go back to Chicago. Fletcher Wilson testified that Larry Branscomb paid him $12.00 to drive him to Memphis at 8:30 that evening. Earl Branscomb testified that Larry Branscomb left for Chicago with a silver pistol and money in a

sack.

Larry was arrested in Chicago on September 27, 1986. He remained incarcerated there until December 11, 1986, when Lee County Deputy Sheriff Stanley Barnes picked him up to bring him back to Arkansas. Except for Larry's testimony that he was visited by family and by someone who discussed extradition with him, and that he did not see a lawyer, we have no information about what happened between those dates. Larry testified he had no conversations with Arkansas officers during the return trip except concerning whether he was hungry and wanted to stop to get something to eat.

Larry arrived at the Lee County jail at 8:12 p.m. on December 11, 1986. The following morning, which was a Friday, at 9:30 he was questioned by Investigator James Rainbolt in the presence of Barnes. Rainbolt testified he advised Larry of his rights and asked if he understood them, one at a time, getting a response as to each one mentioned. He then handed Larry the form which Larry initialled. After Larry had waived his rights, Rainbolt took Larry's personal history, and Larry stated he had a 12th grade education.

When asked by Rainbolt if he had anything to say, Larry gave a statement which Rainbolt wrote down. In it Larry admitted shooting the elderly man but claimed it was self-defense. He mentioned nothing about the robbery. Rainbolt and Barnes confronted Larry with discrepancies between the physical evidence at the scene of the crime and Larry's statement. Larry then gave a second statement in which he admitted he went into the house to rob Morgan after being let out of a car near the house by Earl Branscomb and McCoy. He said he pulled his pistol before Morgan pulled his. He admitted shooting Morgan twice and then running away.

On Monday, December 15, 1986, Larry was taken before the Marianna Municipal Court, which meets on Mondays only.

Deputy Barnes testified that Larry did not ask for a lawyer between the time he was picked up in Chicago and after giving his second statement. Counsel was appointed on February 13, 1987.

## *1. Psychiatric evaluation*

Larry pleaded not guilty by reason of insanity. He was sent to the state hospital for psychiatric examination. The report found him to be mildly retarded with an I.Q. of 67 and mixed personality disorder. The report concluded that Larry did not lack the capacity to appreciate the criminality of his conduct at the time of the crime and that he could cooperate effectively with his attorneys in preparation of his defense. Larry's counsel moved to have the state pay up to $500 to have another psychiatrist examine him and render a report. The motion was denied.

It is contended that the state hospital report was inadequate. The history taken from his mother was said to be deficient because Larry, who is now aged at least 33, had left home when he was 12 or 13, and she had not been with him since then. Counsel also cited Larry's distrust, fantasies, and paranoia they had observed while working with him, as well as stories he told at the preliminary hearing. It is contended here that he did not receive the independent hearing required by *Ake* v. *Oklahoma*, 470 U.S. 68 (1985).

In *See* v. *State*, 296 Ark. 498, 757 S.W.2d 947 (1988), and *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987), we held that an examination by the state hospital satisfied the requirements of the Supreme Court stated in *Ake* v. *Oklahoma, supra.* Counsel on appeal acknowledges the position we have taken but contends that, given the facts of this case, we should reconsider it. We decline to do so. We have concluded that a psychiatric examination given by the state hospital is sufficiently independent of the prosecution. As in *Starr* v. *State*, 297 Ark. 26, 759 S.W.2d 535 (1988), where it was contended that the appellant's marginally retarded condition required additional psychiatric examination, we cannot agree here that additional examination was required. Larry Branscomb's responses to the police interrogation were clear, and there was no allegation of coercion of any sort in the giving of his statements.

## 2. Failure to suppress

### a. Unnecessary delay

The contention here is that the delay of three days between the time Larry arrived in Marianna and the time he was taken before the municipal court violated Rule 8.1. The time between his arrest in Chicago and the trip to Marianna is also noted, but only as having had some effect in causing Larry to confess some 12 hours after his arrival at the Lee County jail. We have no idea of the cause of the delay in Chicago. It could, for example, have been caused by some resistance to extradition, although we have no more evidence of that than we have of any other reason. We can hardly attribute it to an attempt by the state to gain a tactical advantage over Larry. *See Scott* v. *State,* 263 Ark. 669, 566 S.W.2d 737 (1978).

■ Rule 8.1 provides that there shall be no "unnecessary delay" in taking an arrested person before a judicial officer. Neither the rule nor the unofficial commentary defines "unnecessary delay." In *Duncan* v. *State,* 291 Ark. 521, 726 S.W.2d 653 (1987), we set out three requirements for finding a violation of the rule. We wrote that the delay must not be necessary, the evidence sought to be suppressed must be related to the delay, and the evidence must be prejudicial. No doubt Larry's statements were prejudicial to his case. We need not say, however, whether the delay was necessary because we find the evidence was completely unrelated to the delay.

The *Duncan* case, upon which Larry relies, provides a stark contrast to this one. Duncan was held incommunicado for three days. The police admitted verbal abuse was used, and the inculpatory statement came at the end of the period. Here, the statements were given when Larry was first questioned. In *Brown* v. *State,* 276 Ark. 20, 631 S.W.2d 829 (1982), we declined to suppress a confession taken during a three day delay. We wrote that we could not say there had been a violation of Rule 8.1 given the facts of that case. We say the same thing here, in the absence of facts such as those reported in *Duncan* v. *State, supra.*

## b. Waiver of counsel

 Larry contends he cannot be held to have knowingly and intelligently waived his Sixth Amendment right to counsel. He cites our reference in *Duncan* v. *State, supra,* to *United States* v. *Mohabir*, 624 F.2d 1140 (2nd Cir. 1980), and its holding that the Sixth Amendment right to counsel could not be waived absent explanation of that by a judicial officer. In *Patterson* v. *Illinois*, 484 U.S. 895 (1988), the Supreme Court made it clear that the standard *Miranda* warning, which had been held sufficient to constitute a waiver of Fifth Amendment rights, was sufficient to waive the right to counsel provided by the Sixth Amendment as well. The question here is thus the same one with which we have dealt many times. We independently examine the totality of the circumstances to determine whether the trial court's ruling that there was a knowing and intelligent waiver of rights was clearly erroneous. *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989); *Munnerlyn* v. *State*, 292 Ark. 467, 730 S.W.2d 895 (1987); *Beard* v. *State*, 269 Ark. 16, 598 S.W.2d 72 (1980).

 In the *Burin* case we clarified the distinction between the matter of voluntariness in the sense of the waiver and voluntariness in the sense of whether there was police coercion. In discussing the question of knowing and intelligent waiver, we concluded that mental subnormality is one of several circumstances to be considered along with the defendant's age, experience, education, background, and the length of detention. Low I.Q. is not enough to base a holding that a waiver was not intelligent or knowing. *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988).

Larry stated he had gone to school through the 12th grade. He said he had attended a technical-vocational school at DePaul University in Chicago after leaving Arkansas. He also said he had held a job as a blueprint maker and a job as a manager of a shoe store. The record of Larry's colloquy with the court at a hearing where he attempted to plead guilty demonstrates he had limited mentality, and that some of what he said about himself may have been suspect, yet in other discussions his answers were clear and apparently thoughtful.

It was up to the trial judge to decide the credibility of the testimony. Investigator Rainbolt testified that when Larry made his first statement, he made written corrections on it. We cannot say it was clearly wrong to have held the waiver was knowing and intelligent.

### 3. Admissibility of psychiatric report

During the preliminary hearing counsel for Larry asked the court to take judicial notice of the psychiatric evaluation and to admit it for purposes of the preliminary hearing only. The court refused; however, the court did allow counsel to ask Investigator Rainbolt if he was aware of Larry's low I.Q. as described in the report.

The state's objection to the report's admissibility was well taken. No foundation had been laid. While the report might have been admissible as a business record, and thus an exception to the hearsay rule, under A.R.E. 803(6), we have held that a foundation must be laid for the admission of such a document, and the elements of the foundation must be shown by testimony of the custodian or another qualified witness. *Cates* v. *State*, 267 Ark. 726, 589 S.W.2d 598 (1979). As that was not done in this case, there was no error.

### 4. Lesser included offense instructions

The court instructed the jury on capital murder and the lesser included offense of first degree murder. The court refused proffered instructions on second degree murder and manslaughter. Where a lesser included offense has been the subject of an instruction and the jury convicts of the greater offense, error resulting from failure to give instructions on other lesser included offenses is cured. *Harris* v. *State*, 291 Ark. 504, 726 S.W.2d 267 (1987); *McKinnon* v. *State*, 287 Ark. 1, 695 S.W.2d 826 (1985).

### 5. Other possible error

In accordance with Arkansas Supreme Court and Court of Appeals Rule 11(f), we have considered all objections brought to our attention in the abstracts and briefs, and we find no prejudicial error.