Nathaniel MITCHELL *v.* STATE of Arkansas

CR 91-44                                          816 S.W.2d 566

Supreme Court of Arkansas
Opinion delivered September 23, 1991

*Green and Henry*, by: *J.W. Green, Jr.*, and *Dennis R. Molock* for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. A Jefferson County jury tried and convicted appellant, Nathaniel Mitchell, of two counts of first-degree murder and one count of attempted capital felony murder. The jury sentenced appellant to forty years imprisonment for each of the murder convictions, and thirty years imprisonment for the attempted capital felony murder count. Appellant asserts four grounds for reversal of his conviction. We affirm on each of the four grounds.

## I.

## CUSTODIAL STATEMENT

Appellant's primary allegation of error is that the trial court erred in denying his pre-trial motion to suppress his custodial confession. He presents two theories in support of his suppression argument; First, he argues that the failure of the Jefferson County Sheriff's Department to inform appellant that he had legal representation or to follow counsel's instructions regarding appellant's interrogation invalidated appellant's confession. Second, appellant argues that the trial court erred in disregarding his testimony at the suppression hearing that the police denied his

request to use a telephone to arrange for legal representation. We disagree with both of appellant's arguments.

On August 25, 1989, police discovered the bodies of two gunshot victims, Charles Goodloe and Henry Harris, at the Altheimer Recreation Club in Jefferson County. Later that morning, police received information that appellant had killed Goodloe and Harris, and wounded another victim, E.L. Surratt, during a shooting incident the previous evening. Based on this information, the police arrested appellant at his residence in Stuttgart shortly after 4:00 a.m.

The police informed appellant of his *Miranda* rights at the time of his arrest. At approximately 7:00 a.m., the police again informed appellant of his *Miranda* rights. Following the second recitation of the *Miranda* rights, the police conducted a four hour interrogation session with appellant. At the conclusion of the interrogation, appellant gave police a signed confession admitting his involvement in the shootings.

While appellant was in custody, his family had retained counsel for appellant. During appellant's interrogation, counsel repeatedly telephoned the sheriff's department attempting to gain information about appellant's case. The police never told appellant of counsel's efforts. When counsel failed to contact appellant, counsel instructed the police to cease questioning of appellant. The police ignored counsel's instructions, and appellant did not speak to counsel until after appellant confessed to the crime. Appellant argues that the conduct of the police during the interrogation process violated his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), by denying him access to an attorney. We disagree.

A suspect's waiver of his Fifth Amendment rights is valid only if it is made "voluntarily, knowingly and intelligently." *Miranda, supra*, 384 U.S. at 444. The inquiry into the validity of a waiver has two distinct dimensions. *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989) citing *Colorado* v. *Spring*, 479 U.S. 564 (1987) and *Moran* v. *Burbine*, 475 U.S. 412, 421 (1986). First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421; *Burin*, 298 Ark. at 613, 770 S.W.2d at 126. Second, "the waiver must have been

made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *Burin*, 298 Ark. at 613, 770 S.W.2d at 126.

Appellant does not explicitly challenge either prong of the waiver inquiry. Instead, he argues that the trial court should have suppressed his confession because the conduct of the police denied counsel access to appellant. We disagree based on the Supreme Court's decision in *Moran, supra.*

In *Moran*, the Supreme Court held that the failure of the police to follow counsel's instructions or to inform the suspect of counsel's efforts to reach him does not affect the validity of an otherwise proper waiver. Events occurring without a suspect's knowledge do not implicate the validity of a waiver because such events "can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.* at 422.

We have followed *Moran's* interpretation of the waiver requirements. *See Burin, supra,* In the instant case, appellant did not know of counsel's efforts on his behalf. Consequently, we find that the police treatment of counsel is irrelevant to the validity of appellant's waiver.

Appellant attempts to distinguish the instant case from *Moran* by alleging that the Jefferson County police conspired to deny him access to counsel. We also find this distinction irrelevant to the validity of appellant's waiver. We agree with the Supreme Court's assessment of police culpability in *Moran*:

> [W]hether intentional or inadvertent, the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights. Although highly inappropriate, even deliberate deception of an attorney could not possibly affect a suspect's decision to waive his *Miranda* rights unless he were at least aware of the incident.

*Moran, supra,* 475 U.S. at 423.

At the suppression hearing, the trial court found that appellant understood his rights and voluntarily waived them. Only if the " 'totality of the circumstances surrounding the

interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Burin*, 298 Ark. at 613-14, 770 S.W.2d at 126 quoting *Moran*, 475 U.S. at 421. We independently examine the totality of the circumstances to determine whether the trial court's ruling was clearly erroneous. *Branscomb* v. *State*, 299 Ark. 482, 774 S.W.2d 426 (1989); *Burin, supra.*

Appellant argues that the trial court should have suppressed his confession on the basis of his testimony at the suppression hearing. At the suppression hearing, appellant testified that the police denied his request to use a telephone to arrange for legal representation. He further testified that the police ignored his request to cease questioning. However, the testimonies of several police officers contradicted appellant's assertions. They testified that appellant never asked them to cease the interrogation or indicated that he wished to consult an attorney. The police also testified that appellant indicated he understood his rights and waived them.

The credibility of witnesses who testify at a suppression hearing concerning the circumstances surrounding the defendant's in-custodial statement is for the trial judge to determine. *Branscomb, supra*, 299 Ark. at 489, 774 S.W.2d at 429. Based on our independent review of the totality of the circumstances we cannot say that the determination is clearly erroneous.

Accordingly, we affirm the trial court's decision allowing the state to introduce appellant's confession into evidence.

## II.

## AMENDED INFORMATION

For his second allegation of error, appellant argues that the trial court erred in allowing the state to amend its information three days prior to trial. On August 28, 1989, the state charged appellant with one count of premeditated and deliberated capital murder and one count of attempted capital murder. On August 17, 1990, three days prior to trial, the state amended the information to assert an additional count of capital murder. Appellant argues that the additional count violates the statutory prohibition of amendments changing the nature or degree of the

crime charged. Ark. Code Ann. § 16-85-407 (1987). We disagree.

The legislature's 1989 revision of the homicide statutes authorized the state's assertion of the additional murder count. The premeditated and deliberated capital murder statute, Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1989), now provides:

> (a) A person commits capital murder if:
>
> . . . .
>
> With the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person[.]

Prior to 1989, each premeditated and deliberated capital murder count required two victims. Ark. Code Ann. § 5-10-101 (1987).

██ Appellant does not dispute the fact that the new statute was in effect on the date of the alleged murders. We have held that the state may amend an information to conform to the proof so long as the amendment does not change the nature or degree of the offense charged. *Jones* v. *State*, 275 Ark. 12, 627 S.W.2d 6 (1982). The mere fact that an amendment authorizes a more severe penalty does not change the nature or degree of the offense. *Wilson* v. *State*, 286 Ark. 430, 692 S.W.2d 620 (1985). As the state points out, the only effect of the amendment was to split the original single count of capital murder into two counts of capital murder under the new statutory definition of that offense. We consider this amendment to be a matter of form that does not change the nature of the offense charged.

██ Furthermore, appellant failed to request a continuance when he was put on notice that the state planned to amend the information. We have previously held that we will not presume prejudice when an appellant fails to move for a continuance after he is put on notice that the state plans to amend an information. *Harrison* v. *State*, 287 Ark. 102, 696 S.W.2d 501 (1985); *Wilson, supra; Jones, supra.* In this case, appellant knew of the state's plan to amend three days prior to trial. Since he did not move for a continuance, we find no prejudice in the trial court's allowance of the amendment.

## III.

## CHARACTER WITNESSES

Appellant's third allegation of error asserts that the trial court erred in excluding the testimony of six character witnesses for the defense. The trial court granted the state's motion to exclude the testimony because the defense failed to comply with the state's discovery request for the names and addresses of the defense witnesses that would testify at trial. We affirm.

Ark. R. Crim. P. 18.3 provides the applicable discovery rule in criminal cases:

> Subject to constitutional limitations, the prosecuting attorney shall, upon request, be informed as soon as practicable before trial of the nature of any defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof.

The state filed its discovery request on August 30, 1989. On October 10, 1989, the trial court entered an order directing appellant to respond to the state's request within ten days prior to trial. Appellant failed to comply. He argues that the trial court erred in sanctioning him for his noncompliance because the substance of the witnesses' testimony would be limited to statements concerning appellant's truthfulness and veracity.

Rule 18.3 could not be clearer. We have held that the rule applies with equal force to testimony offered in support of a general denial defense and testimony offered to support an affirmative defense. *Weaver* v. *State*, 290 Ark. 556, 720 S.W.2d 905 (1986). Discovery in criminal cases, within constitutional limitations, must be a two way street. *Id.* at 558, 720 S.W.2d at 906. This interpretation promotes fairness by allowing both sides the opportunity to full pretrial preparation, preventing surprise at trial, and avoiding unnecessary delays during the trial. *Id.* In the instant case, the trial court found that appellant's failure to comply with the discovery order prejudiced the state. Without the names and addresses of appellant's witnesses, the state could not exercise its right to obtain information questioning the witnesses' credibility. We find that the trial court's exclusion of appellant's character witnesses was a proper sanction for appellant's blatant

disregard of the discovery rule.

We reject appellant's attempt to characterize his witnesses as rebuttal witnesses. He attempts this characterization in an effort to bring his witnesses within the narrow exception to Rule 18.3 that we recognized in *Weaver, supra*. We noted that genuine rebuttal witnesses need not be disclosed before trial because neither the defense nor the state necessarily knows in advance of the need for such rebuttal testimony. *Id*. In this case, appellant planned to use the witnesses in his case-in-chief. Since he knew in advance of the need for the witnesses' testimony, the trial court did not err in refusing to give appellant the benefit of the rebuttal witness exception to the discovery rule.

## IV.

## JURY INSTRUCTIONS

For his final allegation of error, appellant argues that the trial court erred in instructing the jury on the capital murder charge. The trial judge gave the jury the following instruction on the capital murder charge:

> In count one, that with a premeditated and deliberate purpose of causing the death of Charles Goodloe; . . . Nathaniel Mitchell caused the death of Henry Harris.

The judge gave an identical instruction on the elements of capital murder with respect to the killing of Henry Harris.

Appellant argues that in order to satisfy the elements of capital murder, the state must show that the defendant acted with "an intent to cause the death of A and in so acting, caused the death of B." We disagree based on the common sense construction of the applicable statute, section 5-10-101(a)(4). The statutory phrase "another person" means a person other than the defendant himself. We find no error in the trial court's instruction on capital murder.

Appellant also asserts that the trial court erred in instructing the jury on the definition of attempted premeditated and deliberated capital murder. Specifically, appellant argues that there was no evidence to support an attempt conviction. Appellant's argument is without merit. The victim of the attempted murder testified that appellant deliberately shot him

through a car window. This testimony provided a basis in the evidence for the trial court's instruction on attempted capital murder. Accordingly, we affirm.

GLAZE and BROWN, JJ., concur.

ROBERT L. BROWN, Justice, concurring. I concur with the majority opinion and find no violation of the appellant's constitutional rights under these facts. This case, nevertheless, raises a concern about the access of counsel to an accused in custody.

Statements by an accused must, first, be knowingly and intelligently made and, second, be made voluntarily. The appellant signed a document in this case evidencing that he knew what he was doing in making the statement and was doing so voluntarily. No doubt, in many cases the accused will make a statement to the police because it is obvious the authorities have a strong case against him or he wants to rid himself of the burden of the crime or he desires to curry favor with investigating officers and, incidentally, to receive some consideration for his efforts at sentencing. Equally obvious is the fact that an accused who learns that an attorney has been retained and is trying to see him may well cease further disclosures to police detectives.

As the majority underscores, the emphasis must be placed on the accused and his voluntary and intelligent waiver. However, there is something vaguely chilling about an allegation that an accused was kept incommunicado from counsel for a period of time. Here, I hasten to add, the time was not extensive, since counsel did not make his first telephone call until 10:26 a.m., and the statement was signed minutes later at 10:51 a.m. Further, the facts are inconclusive about whether the department was purposefully delaying counsel contact.

Police officers are well within their rights in limiting access to the accused during certain times such as a sensitive point in interrogations and a line-up when counsel has been waived. Surely, law enforcement does not have to "drop everything" when newly retained counsel calls. At some point, however, counsel must be given access, even though a waiver of counsel has been signed by the accused. That precise time limit is difficult to determine precisely, and the facts of each case must govern accessibility. Any hint, though, that detectives are rushing to

finalize a statement while keeping counsel at bay should be avoided. Here, the limit on attorney access was not egregious enough to warrant an exclusion of the statement from evidence. As the U.S. Supreme Court warns, at some point it could be. *See Moran* v. *Burbine*, 475 U.S. 412, 432 (1986).

GLAZE, J., joins.