Grègory LEDGUIES *v.* STATE of Arkansas

CA CR 93-175                                                   877 S.W.2d 946

Court of Appeals of Arkansas
Division I
Opinion delivered June 15, 1994

*Paul Johnson*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant, Gregory Ledguies, was charged pursuant to Ark. Code Ann. § 5-3-201 (1987) with criminal attempt to commit capital felony murder by shooting at two police officers. He was found guilty by a jury of aggravated assault as to one officer and of criminal attempt to commit capital murder of the other officer, and he was sentenced to four years and eight years, respectively, in the Arkansas Department of Correction, to be served consecutively. Appellant's only argument on appeal is directed against the conviction for attempt to commit capital murder and contends that the trial court erred in allowing the State to amend the information charging that offense after the State had rested its case in chief.

At trial Little Rock Police Officer Mark Smith testified that on September 4, 1991, he was called to a disturbance at 1524 College Street. While he was there he heard several gunshots. He walked south through the alley and located the person who was doing the shooting. As he neared a house at 1624 College a man, identified as appellant, came out of the house and started shooting at him. Officer Smith said he called for assistance and several units responded. The officer said he and the other officers were in uniform and identified themselves as policemen, but appellant refused to drop the weapon. Officer Smith testified that he saw one flash from the muzzle of a weapon directed at him.

He said he did not see any other muzzle flashes because he was running to take cover, but he heard more than six shots directed toward him. According to the officer, appellant would come out on the porch, shoot several times, go back inside the house, come outside again and shoot some more; there were several different episodes of shooting and the entire incident lasted approximately one hour.

Officer Tommy Hudson testified that he responded to the call for back up and blocked off a nearby intersection with his patrol car. He identified appellant as the man who was doing the shooting. Officer Hudson said when appellant saw him, appellant pointed the gun in his direction and started firing. He said he saw one muzzle flash and when he heard two bullets "zing" right by his head, he hit the ground, got behind his patrol car and stayed there. Other officers converged on the scene, including the SWAT team, and Officer Hudson said he used that opportunity to run behind a building.

Officer Everette Davis testified that when he arrived on the scene appellant had gone out the back door and was firing toward the back. Appellant then went back into the house and came out on the front porch again. Officer Davis said appellant had a gun in his right hand and a bottle in his left; appellant sat down on the front porch with his feet on the ground and fired some shots toward a cemetery at the end of College Street; he then emptied the gun, threw the shells out in the yard and went back into the house, leaving his bottle on the porch. A few minutes later appellant came out again and reloaded the gun. According to Officer Davis, he heard a female in the house arguing with appellant, saying that if he didn't quit acting stupid and quit shooting, she was going to leave the house. He said he then heard appellant tell her, "No. You're not going to leave the house. If you try to leave the house, I'll kill you. If the police try to take you, I'll kill them, too." Officer Davis said that when the patrol car arrived and blocked the intersection, appellant pointed the gun directly at the car and fired nine rounds. Davis also testified that, aside from threatening the female inside the house, appellant made several statements about killing police officers if they tried to do anything to take her away or tried to help her. The incident ended when the SWAT team took control of the situation and put gas in the house which forced appellant and the woman out.

When the State rested, counsel for appellant made a motion for dismissal of the two counts of attempt to commit capital felony murder. He argued there was absolutely nothing to show that appellant had any premeditated or deliberate purpose of harming the officers. The court explained that to commit capital felony murder the State had to prove appellant was in the process of committing or attempting to commit rape, kidnapping, arson, vehicular piracy, robbery, burglary or escape in the first degree. The State argued that there was evidence that Mae Ellen Randall, the woman in the house, was being held against her will by the appellant. The judge held that there was inadequate proof from which the court could find beyond a reasonable doubt that there was a kidnapping.

The judge then read both counts of the information which charged appellant with purposely engaging in conduct that constituted a substantial step in the commission of the offense of "capital felony murder" of Officer Tommy Hudson and Officer Mark Smith. The judge then asked, "So, is the State moving to amend at this time on Counts I and II to delete the words felony?" The prosecutor replied that it was. Counsel for appellant said he did not understand the court allowing the State to amend the information after the defense had moved for dismissal. The judge replied that the information can be amended to conform to the proof and that there was no great surprise to counsel. He reasoned that the information, although stating the charge as attempted "capital felony murder," actually described attempted "capital murder," and that there was not any great variance between the charges and the proof. The trial judge held that there was no prejudice to the appellant and allowed the State to strike the word "felony" from each information. At this point counsel for appellant again made a motion for dismissal for lack of a showing of premeditation or deliberation. Again, the motion was denied.

Arkansas Code Annotated Section 5-10-101(a)(1)–(3) (Supp. 1991), in effect at the time the incident here involved occurred, provided in pertinent part that a person commits capital murder if:

> (1) Acting alone or with one (1) or more persons, he commits or attempts to commit rape, kidnapping, vehicular piracy, robbery, burglary, a felony violation of the Uniform Controlled Substances Act, §§ 5-64-101 – 5-64-608,

involving an actual delivery of a controlled substance, or escape in the first degree, and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or

. . . .

(3) With the premeditated and deliberate purpose of causing death of any law enforcement officer, jailer, prison official, firefighter, judge or other court official, probation officer, parole officer, or any military personnel, when such person is acting in the line of duty, he causes the death of any person[.]

Appellant's argument is that the trial judge should not have allowed the State to amend the information because it changed the nature of the underlying charge. In support of this argument he cites *Bell* v. *State*, 296 Ark. 458, 757 S.W.2d 937 (1988), and *Thomas* v. *State*, 2 Ark. App. 238, 620 S.W.2d 300 (1981). In *Bell* the Arkansas Supreme Court held that it was error to allow the State to amend the information five days before the trial to charge capital murder in the perpetration of aggravated robbery instead of first degree murder. It said that capital murder and first degree murder are not crimes of the same degree; that although capital murder includes the lesser offense of first degree murder, first degree murder does not include capital murder. The conviction was not reversed, however, because the issue had not been preserved for appeal. And in *Thomas* this court said that an amendment to an information adding a charge under the Habitual Offender Act did not change the nature or degree of the crime charged but simply allowed evidence on which the punishment could be enhanced in the event of a conviction on the basic charge.

In the present case, allowing the State to strike the word "felony" from each information did not cause any real change in the nature or degree of the charges against the appellant. Although, the term "capital felony murder" has been used in some reported cases, we are not aware of a statute which contains that specific phrase. Ark. Code Ann. § 5-10-101(a) (Supp. 1991) simply pro-

vides that "a person commits capital murder if" and several subsections complete the definition. Subsection (1), as quoted above in this opinion, does provide that capital murder is committed when the death of a person is caused by one who commits, or attempts to commit, certain named felonies. However, capital murder is also committed when death is caused under the circumstances set out in subsection (3). As the only effect of the amendment made in this case was to remove the word "felony" from the information, it is obvious that the amendment did not inject anything new into the case. The amendment did not even change the penalty as all capital murders are Class Y felonies. *See* Ark. Code Ann. § 5-10-101(c).

The State may amend an information to conform to the proof so long as the amendment does not change the nature or degree of the offense charged. *Mitchell* v. *State*, 306 Ark. 464, 470, 816 S.W.2d 566, 569 (1991). If the defendant is not surprised, an information may be amended after the jury has been sworn, but before the case has been submitted to the jury, so long as the amendment does not change the nature or degree of the crime charged. *Smith* v. *State*, 310 Ark. 247, 837 S.W.2d 279 (1992); *Wilson* v. *State*, 286 Ark. 430, 692 S.W.2d 620 (1985).

Here, the amendment occurred before the case was submitted to the jury, and it did not change the nature or degree of the crime charged. The only change made by the amendment was to eliminate the allegation that the appellant had committed, or attempted to commit, another felony in addition to the attempt to kill the two law enforcement officers. The appellant was not prejudiced or surprised by the amendment as shown by the fact that, before the amendment was made, defense counsel made a motion for dismissal of the charges and, using the exact language of Ark. Code Ann. § 5-10-101(a)(3), stated that there was no evidence that appellant "had any premeditated or deliberate purpose of doing anything towards these officers." Clearly, appellant knew the basis of the charges for which he was being tried, and he did not move for a continuance. Under these circumstances, the trial court did not err in allowing the amendment.

Because the appellant was convicted of a lesser included offense on Count I, his argument here can only refer to his conviction on Count II.

150

Affirmed.

COOPER and ROBBINS, JJ., agree.