The Honorable Mark Stodola Prosecuting Attorney, Sixth Judicial District 122 S. Broadway Little Rock, Arkansas 72201
Dear Mr. Stodola:
This letter is in response to your request for an opinion regarding several issues arising out of Acts 1009, 1011, and 1326 of 1995. These acts change the minimum sentences that defendants can receive upon conviction of certain offenses in the event that those defendants have previously been convicted of certain other offenses. The acts also change parole eligibility dates for those defendants.
You have presented the following specific questions:
 1(a). Given the "two strikes" provision found in section (c) of Act 1009 or 1011, does due process require, as notice to the defendant, an habitual allegation in the criminal information stating the minimum sentence in terms of years, or does it require simply an habitual allegation in the information stating that the defendant's minimum sentence could be increased?
 1(b). Given the "two strikes" provision found in section (c) of Act 1009 or 1011, does due process require, as notice to the defendant, a specific allegation in the criminal information regarding the minimum time the defendant must serve in prison before he can become eligible for parole or community punishment transfer?
 2(a). Given the "three strikes" provision found in section (d) of Act 1009 or 1011, does due process require, as notice to the defendant, an habitual allegation in the criminal information stating the minimum sentence sought against him in terms of years?
 2(b). Given the "three strikes" provision found in section (d) of Act 1009 or 1011, does due process require, as notice to the defendant, an habitual allegation in the criminal information of the minimum time he must serve in prison before becoming eligible for parole or community punishment transfer?
 3. Do Acts 1009 and 1011 mandate that all defendants whose prior convictions and current crime(s) fall within the purview of sections (c) and (d) of the Acts be charged as habitual offenders pursuant to those sections?
 4. How should the jury be instructed on the issue of minimum sentences under either the two strikes provision or the three strikes provision in sections (c) and (d)?
 5. Does subsection (f) conflict with either one or both of subsections (c) and (d) in terms of whether parole eligibility accrues at all where a person is charged under these sections in Act 1009 and 1011?
 6(a). Does Act 1326 of 1995 (70% minimum sentence served before eligibility for parole) conflict with subsections (c), (d), or (f) of Act 1009 or 1011 of 1995 in terms of when one is eligible for parole?
 6(b). How should the jury be instructed on this issue during the sentencing phase of the trial?
 7(a). Should the phrase "eligible for parole" in Act 1326 mean" eligible for transfer to community punishment"?
 7(b). How should the jury be instructed on this issue in the sentencing phase of the trial?
RESPONSE
Question 1(a) — Given the "two strikes" provision found in section (c) ofAct 1009 or 1011, does due process require, as notice to the defendant,an habitual allegation in the criminal information stating the minimumsentence in terms of years, or does it require simply an habitualallegation in the information stating that the defendant's minimumsentence could be increased?
It is my opinion that due process does not require that any specific or general statement concerning the enhanced punishment that can be imposed upon the defendant be included in the information; however it is my opinion that the information must include a statement of the defendant's alleged prior convictions.
It is well-established that an information need only contain sufficient allegations to notify a defendant of the nature of the matters with which he is charged so as to enable him to prepare a defense. See, e.g.,Purifoy v. State, 307 Ark. 482, 822 S.W.2d 374 (1991); Dunlap v. State,303 Ark. 222, 795 S.W.2d 920 (1990), cert. denied, 498 U.S. 1121;Williams v. State, 302 Ark. 234, 788 S.W.2d 241 (1990); Mayer v. State,285 Ark. 73, 685 S.W.2d 143 (1985).
Moreover, the Arkansas Supreme Court has specifically held that an information that did not contain a statement of potential penalties was sufficient. In Workman v. State, 267 Ark. 103, 589 S.W.2d 20 (1979), the Arkansas Supreme Court was presented with an argument that a criminal information was insufficient because it did not contain a statement of the potential penalties to be imposed upon the defendant. The court rejected the argument. The court noted that the applicable statutes do not require a statement of the penalty. See A.C.A. § 16-85-401 et seq.
However, the Arkansas Supreme Court has held that if enhanced punishment is sought against the defendant on the grounds that he is an habitual offender, a statement of the previous convictions must be included in the information. See Finch v. State, 262 Ark. 313, 556 S.W.2d 343 (1977).
On the basis of these authorities, I have concluded that a criminal information must include a statement of the defendant's prior convictions (if enhanced punishment is going to be sought on the basis of those prior convictions), but it need not contain a statement of what the enhanced punishment might be. My conclusion regarding this matter is bolstered by some of the cases dealing with the issue of amendments to indictments and informations. In the cases to which I refer, the Arkansas Supreme Court has held that the act of amending an indictment or information so as to charge the defendant as an habitual offender does not change the nature or degree of the offense charged, but rather simply allows the adducement of evidence for the purpose of enhancing punishment, and is therefore allowable. See Manning v. State, 318 Ark. 1, 883 S.W.2d 455 (1994);Mitchell v. State, 306 Ark. 464, 816 S.W.2d 566 (1991); Traylor v.State, 304 Ark. 174, 801 S.W.2d 267 (1990); Harrison v. State,287 Ark. 102, 696 S.W.2d 501 (1985); Lincoln v. State, 287 Ark. 16,696 S.W.2d 316 (1985); Wilson v. State,286 Ark. 430, 692 S.W.2d 620 (1985); Thomas v.State, 2 Ark. App. 238, 620 S.W.2d 300 (1981); Finch, supra. The court has also held that the purpose of the requirement of a statement in an information or indictment of a defendant's alleged prior convictions is to enable the defendant to defend against proof of such convictions. SeeReed v. State, 282 Ark. 492, 669 S.W.2d 192 (1984); Finch, supra. The purpose apparently is not to notify the defendant of the enhanced punishment that can result from the existence of the previous convictions,[1] but rather to allow him an opportunity to refute the evidence that is offered to support a request for enhanced punishment. These decisions indicate that a statement of the enhanced punishment that can result from prior convictions is not necessary in an information.
For the foregoing reasons, it is my opinion that a criminal information that is filed against a defendant who would be governed by sections (c) and (d) of Acts 1009 and 1011 of 1995 need not contain any statement regarding the enhanced punishment that the defendant might receive; however, the information must include a statement of the defendant's prior convictions.
Question 1(b) — Given the "two strikes" provision found in section (c) ofAct 1009 or 1011, does due process require, as notice to the defendant, aspecific allegation in the criminal information regarding the minimum timethe defendant must serve in prison before he can become eligible forparole or community punishment transfer?
It is my opinion that such an allegation need not be included in the information. The reasoning supporting this conclusion is set forth in my response to Question 1(a).
Question 2(a) — Given the "three strikes" provision found in section (d)of Act 1009 or 1011, does due process require, as notice to thedefendant, an habitual allegation stating the minimum sentence soughtagainst him in terms of years?
It is my opinion that such an allegation need not be included in the information. The reasoning supporting this conclusion is set forth in my response to Question 1(a).
Question 2(b) — Given the "three strikes" provision found in section (d)of Act 1009 or 1011, does due process require, as notice to thedefendant, an allegation of the minimum time he must serve in prisonbefore becoming eligible for parole or community punishment transfer?
It is my opinion that such an allegation need not be included in the information. The reasoning supporting this conclusion is set forth in my response to Question 1(a).
Question 3 — Do Acts 1009 and 1011 mandate that all defendants whoseprior convictions and current crime(s) fall within the purview of sections(c) and (d) of the Acts be charged as habitual offenders pursuant tothose sections?
It is my opinion that Acts 1009 and 1011 do mandate that all defendants whose prior convictions and current crime(s) fall within the purview of sections (c) and (d) be charged as habitual offenders pursuant to those sections.
I base this conclusion on the legislature's use of the mandatory term "shall" in those sections. The Arkansas Supreme Court has held many times that the use of the word "shall" in legislation indicates a legislative intent that the legislation's provisions be mandatory. See, e.g.,Campbell v. State, 311 Ark. 641, 846 S.W.2d 639 (1993).
The part of Acts 1009 and 1011 that amends A.C.A. § 5-4-501(c) states:
 A defendant who is convicted of a serious felony involving violence enumerated below and who has previously been convicted on one (1) or more separate and distinct prior occasions of one (1) or more of the serious felonies involving violence enumerated below shall be sentenced to imprisonment, without eligibility of parole or community punishment transfer, for term of not less than forty (4) year nor more than eighty (80) years, or for life.
Acts 1009 and 1011, Section 1 (emphasis added).
Similarly, the part of Acts 1009 and 1011 that amends A.C.A. § 5-4-501(d) states:
 A defendant who is convicted of a felony involving violence enumerated below and who has previously been convicted on two (2) or more separate and distinct prior occasions of one (1) or more of the felonies involving violence enumerated below shall be sentenced to an extended term of imprisonment, without eligibility for parole or community punishment transfer. . . .
Acts 1009 and 1011, Section 1 (emphasis added).
This use of the word "shall" in these sections of the Acts indicates that the provisions in which the word appears are mandatory. Because defendants who fit the descriptions set forth in those sections must be sentenced according to those provisions, it follows that they must be charged as habitual offenders pursuant to those sections.
Question 4 — How should the jury be instructed on the issue of minimumsentences under either the two or three strikes provisions in sections(c) and (d)?
I am unable to opine as to the appropriate instructions to be given to the jury in any case. This is a matter that not only is wholly within the province of the court, see Sweeney v. State, 35 Ark. 215 (1880), but also is dependent upon what has transpired during the presentation of evidence. Davis v. State, 155 Ark. 245, 244 S.W. 750 (1922).
Question 5 — Does subsection (f) conflict with either one or both ofsubsections (c) and (d) in terms of whether parole eligibility accrues atall where a person is charged under these sections in Act 1009 and 1011?
I am interpreting your reference to "subsection (f)" as a reference to Section 2 of Acts 1009 and 1011. That section states:
 Arkansas Code § 16-93-1302 is amended to add an additional subsection (f) to read as follows:
 (f) Inmates who are sentenced under the provisions of subsections (c) or (d) of Arkansas Code § 5-4-501 for serious violent felonies or felonies involving violence may be considered eligible for parole or for community punishment transfer upon reaching regular parole or transfer eligibility, but only after reaching a minimum age of fifty-five (55) years.
Acts 1995, Nos. 1009 and 1011, Section 2.
I have previously opined that the above-quoted section does not conflict with sections (c) and (d), but rather, creates an exception to those sections. See Attorney General Opinion No. 95-223, a copy of which is enclosed. As I stated in that opinion, the exception created by subsection (f) will apply only to persons who: (1) Reach age 55; and (2) Who serve for the amount of time that would have been required for them to obtain parole or transfer eligibility if they had not been sentenced under sections (c) or (d).
Question 6(a) — Does Act 1326 of 1995 (70% minimum sentence served beforeeligibility for parole) conflict with subsections (c), (d), or (f) of Act1009 or 1011 of 1995 in terms of when one is eligible for parole?
I have previously opined that Act 1326 does not conflict with Act 1009 (or with Act 1011), but rather, simply does not apply to persons convicted and sentenced under sections (c) or (d) of those acts. See
Attorney General Opinion No. 95-223, a copy of which is enclosed. As I stated in that opinion, sections (c) and (d) are specific, whereas Act 1326 is general. Accordingly, sections (c) and (d) will govern rather than Act 1326. See, e.g., Sunbelt Courier v. McCartney, 31 Ark. App. 8,786 S.W.2d 121 (1990), aff'd 303 Ark. 522, 798 S.W.2d 92 (1990); Thomasv. Easley, 277 Ark. 222, 640 S.W.2d 797 (1982).
Question 6(b) — How should the jury be instructed on this issue duringthe sentencing phase of the trial?
As indicated previously in response to Question 4, I am unable to opine as to the specific jury instructions to be rendered in any particular case. This is a matter that is wholly within the court's discretion.
Question 7(a) — Should the phrase "eligible for parole" in Act 1326 mean"eligible for transfer to community punishment"?
I have previously opined that the phrase "eligible for parole" is not synonymous with eligibility for transfer to community punishment. See
Attorney General Opinion No. 95-223, a copy of which is enclosed. As explained therein, it is my opinion that in Act 1326, the legislature used the term "parole" in its traditional sense, giving it a meaning of release into the community. Although transfer to community punishmentcan mean release into the community, it can also mean continued incarceration in a correctional facility. It is my opinion that the legislative intent was to prohibit release of the described defendants into the community prior to their having served seventy percent of their sentences.
Question 7(b) — How should the jury be instructed on this issue in thesentencing phase of the trial?
Please see my response to Question 4.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] It should be noted that on some occasions, the court's language has indicated a concern in amendment cases with assuring that the defendant is not surprised by the possibility of enhanced punishment. See, e.g.,Thomas v. State, 2 Ark. App. 238, 620 S.W.2d 300 (1981) (amendment to information allowed because defendant was informed during in-chambers hearing that punishment could be enhanced); Christian v. State,318 Ark. 813, 889 S.W.2d 717 (1994) (amendment of information allowed because it did not enhance punishment). However, the weight of authority, examples of which are cited in the body of this opinion, indicate that notice to the defendant of enhanced punishment is not a purpose of the indictment or information.