SMITH *v.* STATE

5181                                401 S. W. 2d. 749

Opinion delivered April 25, 1966.

*John Mac Smith,* for appellant.

*Bruce Bennett,* Atty. General; *Lance Hanshaw,* Asst. Atty. General, for appellee.

PAUL WARD, Justice. Appellant Larry Smith, a nineteen year old Negro, was charged with the killing of Carl Van Young, a white man, on February 29, 1964. Young, who worked as a night watchman near West Memphis, was found fatally wounded close to Highway 70 early in the morning, and his wrecked car was found near Forrest City.

At the trial on September 28, 1965 appellant was found guilty of murder in the first degree and sentenced to death by electrocution.

On appeal appellant seeks a reversal, relying on

three separate grounds, which we now proceed to discuss.

*One.* In appellant's motion for a new trial there appears this statement:

> "The insanity of the defendant having been specifically pleaded as a defense and the State of Arkansas having introduced into the record the testimony of two psychiatrists . . . and the defense also having introduced testimony relative to the sanity of the defendant, the court committed error in refusing to give defendant's requested instruction no. 1 . . . ."

The instruction referred to above submitted to the jury the question of the sanity or insanity of appellant. We deem it unnecessary to set out the requested instruction for two reasons. First, it was, in substance, approved in *Bell* v. *State,* 120 Ark. 530 (p. 553), 180 S. W. 186; *Hall* v. *State,* 209 Ark. 180, 189 S. W. 2d 917, and, secondly, the State does not deny "that the requested instruction denied by the court contained the law in Arkansas for the legal test of insanity." It is the contention of the State, however, that "there is no testimony calling for such an instruction." We do not agree.

Appellant was sent to the State Hospital where he was under observation for thirty days. At the end of that period the doctors were not satisfied, and the observance was extended for another thirty days. The final finding was that appellant knew the difference between right and wrong, but that finding was somewhat modified by the examining doctors. It was agreed by the doctors that appellant "suffered from a schizoid personality, and this means that he had an active psychosis or disease." One of the examining doctors, on cross-examination, stated: "Schizoid personality means a certain type of character throughout life which rarely, if ever, is altered and cannot be changed by any form of therapy. The depth of the psychotic pathology allows these persons little room to maneuver under conditions

of stress except into the actual psychosis.'' Another examining doctor testified ''schizophrenia is a major mental illness and is fairly common.'' He also stated that appellant was not a normal person in his opinion. Added to the above medical statements, is the testimony of the deputy sheriff and the parents of appellant that he was not a normal person.

In the *Hall* case supra, this Court, after quoting Dr. Kolb as saying the defendant ''knew right from wrong and can refrain from doing wrong if he so desires,'' made this statement:

> ''A number of physicians and lay witnesses testified in his behalf which tended to show that he had a psychopathic personality or that there was insanity in his family and that he acted strangely at times, *but after all it was a question for the jury,* and by its verdict he was found to be sane, and being supported by substantial evidence it must be permitted to stand.'' (Emphasis added.)

It is our opinion, therefore, that the case must be reversed because of the court's failure to give the instruction as requested.

Since, as above indicated, the case must be reversed and since it must be remanded for another trial, we deem it appropriate to examine briefly the other two assignments of error.

*Two.* It is our opinion that, upon a retrial, the confession of guilt made by appellant should not be introduced in evidence under the same facts and circumstances revealed by this record. In reaching this conclusion we take into consideration various facts and circumstances; (a) He was arraigned before the municipal court on March 2, 1964 when he pleaded not guilty; (b) He spent over five months in jail, without the aid and advice of counsel before the information was filed against him in circuit court; (c) The deputy sheriff in

charge of appellant very properly advised appellant he needed counsel and to secure same, yet it seems no effort was made to help him do so; (d) It was not until September 4, 1964 that counsel was appointed to represent appellant. From that date he was ably represented, but the damage (from appellant's viewpoint) had already been done. In *Escobedo* v. *Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, the Supreme Court of the United States used this language:

> " ' . . . We hold that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and under the circumstances here, the accused must be permitted to consult with his lawyer.' "

The above language is, we think applicable to the facts in the present case. When appellant was arraigned on March 2, 1964 the investigatory phase ended and the accusatory phase began. Although the officer having custody of appellant very properly informed him of his right to have a lawyer and to remain silent, those rights were thereafter, from a practicable standpoint, ignored. No provision was made for a lawyer until much later. In the meantime appellant was told he was in bad trouble and that he would have to come up with the pistol. It is admitted the State's witness told appellant he was a prime suspect before he had said "anything incriminating." It was later when appellant admitted his guilt.

We realize the difficulties encountered by law enforcement officers in cases of this nature, and particularly those officers who have felt it was a part of their duties to solve reported crime. However new guide lines in this field have been announced in recent years by the courts which often present borderline questions, but we feel it our duty to resolve doubtful questions in favor of individual rights and their constitutional safeguards.

*Three.* Appellant contends it was error for the

trial court to refuse to quash the petit jury panel because the evidence shows Negroes were discriminated against in selecting the jurors.

Conceding, for the sake of brevity and for the purpose of this opinion, that such discrimination was shown to be the practice in Crittenden County for the past twenty or thirty years, we do not feel compelled to conclude that alone proves discrimination was practiced in this instance. In fact we do not think the evidence supports such conclusion.

The three jury commissioners selected seven Negro jurors to serve, and the only testimony tending to show they were "deliberately included" was that they were known to be cooperative with white people and that the trial court told the commissioners to place some Negroes on the panel. True, it would have been proper for the court to tell the commissioners to disregard race and color. This testimony, however, amounts only to conjecture and merely casts a suspicion on the motives of the commissioners, and we have many times held such has no probative value. In a situation of this kind we are inclined to the view that appellate courts should presume those in charge of law administration and law enforcement to be honest and sincere in the discharge of their duties. If it were possible, and if the disciples Peter, James and John had selected the jurors in this instance, some people would most likely question their motives. We have no illusions that this illustration will or should solve all similar issues arising in the future, but we do believe it could be helpful as a "guide line."

Finding no substantial evidence to the contrary, we are unwilling to say the commissioners discriminated against the Negroes, either by deliberately including or excluding them as jurors.

The cause is reversed and remanded for further proceedings consistent with this opinion.

Reversed.