Charles Edward BRADFORD *v.* STATE of Arkansas

CR 91-105                                    815 S.W.2d 947

Supreme Court of Arkansas
Opinion delivered September 30, 1991

*Davis H. Loftin*, for appellant.

*Winston Bryant*, Att'y Gen., *Catherine Templeton*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Charles E. Bradford, was convicted of first degree murder by a Crittenden County Circuit Court jury and sentenced to life imprisonment. On appeal, he challenges the admission of three statements and some photographs. We affirm his conviction.

The evidence in this case reveals that Yvonne Parker was murdered on November 17, 1989. On November 22, 1989, appellant went to the West Memphis Police Department and, after being informed of and waiving his *Miranda* rights, gave a statement regarding Yvonne Parker's murder. Appellant denied any involvement in the murder, but admitted that he went to Parker's trailer on November 17th and found her dead. He told the officers that he panicked and ran from the trailer, taking a bloody towel with him. Toward the end of the statement, Detective James Sudbury told appellant he thought appellant had killed Parker. At that point, appellant told Detective Sudbury he did not want to say any more until he could obtain an attorney. The statement was concluded and appellant was arrested and held pursuant to an outstanding warrant on a drug charge.

On either November 24th or 25th, appellant told a jailer that he wanted to speak to the detectives. The jailer, Rodney Ivy, could not contact the detectives for a few days because of the Thanksgiving holiday. A bond hearing was held on November 27, 1989, and appellant's father asked the judge for some time to obtain an attorney to represent appellant. The judge granted this request. On November 29th, after being informed that appellant wished to speak with a detective, Detective Sudbury went to see appellant at the jail and asked if he still wanted to speak to a detective. Appellant indicated that he did. Detective Sudbury informed appellant of his rights in the presence of Lieutenant Tony Miller and Detective McCraken. Appellant then signed a waiver of rights form. Following the waiver of his rights, appellant discussed the case with Lieutenant Miller and Detec-

tive McCraken. At the end of the discussion, appellant agreed to take a polygraph examination.

A polygraph examination was set up with the Arkansas State Police in Jonesboro and appellant was transported to Jonesboro that afternoon, November 29, 1989. State Police Investigator Charles Beal informed appellant of his rights. Appellant signed a waiver of rights form and gave a statement, telling Investigator Beal that he had also taken Yvonne Parker's purse when he left the trailer that night. Investigator Beal testified that after the examination was concluded, he read appellant his rights again and appellant then gave a statement admitting that he killed Yvonne Parker.

On November 30, 1989, appellant called Linda McCoy, Yvonne Parker's sister, from the West Memphis jail and told her that he had killed her sister. Appellant and McCoy lived together for thirteen years and had three children. Appellant's father was apparently unable to obtain an attorney for him, and counsel was appointed to represent him on December 1, 1989. Appellant was charged with first degree murder on January 12, 1990.

Appellant filed a motion to suppress the November 22, 1989 statement, the statement following the polygraph examination on November 29, 1989, and his statement to Linda McCoy. After a hearing on the motion to suppress, the trial court ruled that all three statements were admissible into evidence.

Appellant first contends the trial court erred by admitting the November 22, 1989 statement to the West Memphis Police Department. Appellant argues this statement should have been suppressed because he was arrested on November 23, 1989, and an attorney was not appointed to represent him until December 1, 1989. He contends this delay, from the time of his arrest until the time counsel was appointed to represent him, violated his constitutional right to counsel; thus, the statement made to the West Memphis police on November 22, 1989, should be suppressed. Appellee responds with the argument that appellant waived his right to counsel prior to giving the November 22, 1989 statement.

The burden is on the state to establish that appellant waived his rights and all doubts must be resolved in favor of the individual rights and constitutional safeguards. *Sutton* v. *State*,

262 Ark. 492, 559 S.W.2d 16 (1977). The inquiry into the validity of appellant's waiver of his *Miranda* rights, specifically his right to counsel, has two distinct dimensions. *Colorado* v. *Spring*, 479 U.S. 564 (1987); *Burin* v. *State*, 298 Ark. 611, 770 S.W.2d 125 (1989). The waiver must be voluntary and it must be made knowingly and intelligently. *Colorado, supra; Burin, supra.*

■ The requirement that a waiver of *Miranda* rights be voluntary is concerned with coercive police activity. *Burin, supra.* As appellant never alleged any coercive activity by the police in connection with this statement, we need only consider whether appellant waived his right to counsel knowingly and intelligently prior to giving the statement. Factors bearing on this determination include appellant's age, experience, education, background, and the length of detention. *Burin, supra.* Appellant was thirty-three years old and had a twelfth-grade education at the time he gave the statement in question. He had been arrested previously for a drug offense. The statement'began at 11:21 p.m. on November 22, 1989, and was concluded at 12:03 a.m. on November 23, 1989. As stated previously in this opinion, appellant signed a waiver of rights form prior to giving the statement. When he exercised his right to counsel during the statement, the statement was quickly concluded.

Counsel had not been appointed for appellant because he indicated he was trying to obtain his own counsel. On November 22, 1989, appellant told the West Memphis police officers that he did not want to talk any more until he got himself an attorney. Similarly, at appellant's bond hearing on November 27, 1989, his father asked the judge for some time to obtain an attorney to represent appellant. At no time did appellant indicate that he wanted appointed counsel. Appellant's father was apparently unable to obtain counsel for him, thus counsel was appointed to represent him on December 1, 1989. We conclude the statement was not taken in violation of appellant's right to counsel, and the trial court correctly denied the motion to suppress it.

For his second argument on appeal, appellant contends the trial court erred in admitting the statement he made on November 29, 1989, to Investigator Beal after taking the polygraph test. Investigator Beal testified that at 5:18 p.m. on November 29,

1989, he advised appellant of his rights. Investigator Beal testified that appellant indicated to him verbally that he understood those rights and that he signed the rights form. Beal testified further that no force, promises, threats, or coercion were used to get appellant's signature on the form. After waiving his rights and before taking the polygraph examination, appellant made a brief statement, admitting that he had taken Yvonne Parker's purse from the trailer on the night of the murder.

Investigator Beal then conducted a polygraph examination on appellant. Following the examination, appellant made another statement to investigator Beal admitting that he killed Yvonne Parker. Investigator Beal testified at trial that he read appellant his rights before appellant gave this incriminating statement. Investigator Beal then wrote the statement down in appellant's exact words and went over each word with him. He testified that he observed appellant sign each page of the statement and again at the end of the statement.

Appellant contends that because the results of his polygraph examination were inadmissible, this incriminating statement was also inadmissible as it resulted from his polygraph examination. We have specifically held that incriminating statements and admissions made freely and voluntarily after or as a result of a polygraph examination are admissible into evidence, if they are not otherwise involuntary. *See Gardner* v. *State*, 263 Ark. 739, 569 S.W.2d 74 (1978), *cert. denied*, 440 U.S. 911 (1979). Appellant does not allege the statement was involuntary in any manner.

The state submits that the statement appellant made following his polygraph examination was admissible under *Gardner*. Although appellant had invoked his right to counsel a few days prior to taking the polygraph examination, he reinitiated contact with the police on November 29, 1989. He then waived his rights knowingly, intelligently, and voluntarily prior to making this statement after the polygraph examination. Accordingly, the trial court correctly allowed the statement to be introduced into evidence.

As his third argument, appellant contends the trial court erred in allowing the victim's sister to testify that appellant called her from the West Memphis jail on November 30, 1989, and

admitted that he had killed her sister. Appellant sought to have this statement suppressed on the basis that he was in custody at the time this call was made and that he was without the benefit of counsel.

We find no merit in this argument. The requirements of *Miranda* v. *Arizona*, 384 U.S. 436 (1966), do not come into play unless a defendant is subjected to custodial interrogation or the functional equivalent thereof. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). Appellant made this statement to a third party. We cannot say this phone call was the functional equivalent of custodial interrogation. The trial court did not err in denying the motion to suppress the statement made to the victim's sister.

For his final argument, appellant contends the trial court erred in admitting photographs of the victim's body into evidence. He argues the photograph depicting the victim's neck bent backward to demonstrate her cut throat and the photograph demonstrating eight stab wounds into the heart area had a prejudicial effect that outweighs the probative value of the photographs.

Both the state and the defense rely on the rule announced in *Berry* v. *State*, 290 Ark. 223, 227, 718 S.W.2d 447, 449 (1986) where this court stated:

> The fact that photographs are inflammatory is not alone sufficient reason to exclude them. [Citations omitted.] Inflammatory pictures are "admissible in the discretion of the trial judge, if they tend to shed light on any issue or are useful to enable a witness to better describe the objects portrayed or the jury to better understand the testimony, or to corroborate testimony." [Citation omitted.]

The two photographs may have enabled the medical examiner to better describe the wounds that contributed to the victim's death and demonstrate to the jury the nature and extent of the wounds she suffered, as well as the savagery of the attack on her. We stated in *Cash* v. *State*, 301 Ark. 370, 784 S.W.2d 166 (1990), that pictures may also be useful to the jury by showing the nature and extent of wounds and savagery the attack on the victim.

The admissibility of photographs is in the sound discretion of the trial judge, whose decision will not be set aside absent an abuse of that discretion. *Owens* v. *State*, 300 Ark. 73, 777 S.W.2d 205 (1989). We do not find the trial court abused its discretion in admitting the photographs into evidence.

As required by Ark. Sup. Ct. R. 11(f), the objections decided adversely to appellant have been abstracted; we have reviewed these objections and find that none of them merits reversal.

Affirmed.