Willie Charles SUGGS *v.* STATE of Arkansas

CR 95-478                                           907 S.W.2d 124

Supreme Court of Arkansas
Opinion delivered October 9, 1995

*Durrett & Coleman*, by: *Gerald A. Coleman*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. This is appellant Willie Suggs's second appeal. In his first, this court reversed his first degree murder conviction due to trial error and remanded the case for a new trial. *Suggs* v. *State*, 317 Ark. 541, 879 S.W.2d 428 (1994). Suggs was retried, and was convicted of second degree murder and sentenced to twenty years. He raises four points for reversal.

In his first argument, Suggs states that when he was originally tried and convicted in 1993, Arkansas law then authorized, and he received, a non-bifurcated trial. However, after his original conviction, but before his case was reversed and remanded by this court, the General Assembly amended Arkansas law, effective January 1, 1994, to permit bifurcated trials in all felony cases. *See* Ark. Code Ann. § 5-4-103 (Repl. 1994). At Suggs's second trial on remand, which commenced in February of 1995, the trial court ruled it should try Suggs's case pursuant to the newly-enacted bifurcated trial procedure. Suggs suggests the trial

court's decision to retroactively apply the new law in his case violated the Ex Post Facto Clause. We disagree.

In *Williams* v. *State*, 318 Ark. 846, 887 S.W.2d 530 (1994), Williams made a similar argument to the one Suggs advances here. There, Williams, who was tried in January of 1994, contended that, because his alleged crimes occurred in 1993, he was entitled to the non-bifurcated trial procedure in effect in 1993. Williams claimed that, when the trial court retroactively utilized Arkansas's new bifurcated sentencing procedure (effective January 1, 1994), it violated the Ex Post Facto Clause. This court rejected Williams's argument, and explained that Arkansas's new bifurcated sentencing laws do not violate the Ex Post Facto Clause because they do not criminalize conduct that was previously non-criminal, do not increase the severity or harshness of the punishment for the offenses that Williams committed and do not deprive him of a defense that was available to him at the time he committed the offenses with which he was charged. *See also Diffee* v. *State*, 319 Ark. 669, 894 S.W.2d 564 (1995). The court further determined that the penalty or sentence authorized under the sentencing statutes remained the same at all relevant times in Williams's situation and any change in the sentencing trial procedure was merely procedural, not substantively prejudicial or an Ex Post Facto violation. Here, the same is true in Suggs's situation.

Suggs's second point emanates from his having refused to be present when trial proceedings reconvened on the morning of February 9, 1995. The deputy sheriff relayed Suggs's message that Suggs "did not care how long the court and jury had to wait, he would come when he got dressed and he got ready." Defense counsel then moved for a mistrial, claiming Suggs was prejudiced because the jury became aware that the sheriff's department had Suggs incarcerated "because they've (deputies have) been going back and forth trying to find him."

Here, Suggs asserts the trial court's denial of his motion amounted to reversible error. Suggs is wrong on this point for more than one reason, but the short answer is that the record fails to demonstrate the error asserted on appeal. *Claiborne* v. *State*, 319 Ark. 537, 893 S.W.2d 324 (1995). In fact, the colloquy between the trial court and the deputy sheriff and the exchange

between defense counsel and the trial court are designated in the record as being "held at the bench out of the hearing of the jury." In sum, our review of the record fails to reveal the jury saw Suggs in prison garb or show it was in any way made aware of his incarceration.

Suggs raises a third issue wherein he claims the state criminalist expert witness, Don Smith, knowingly gave opinion evidence that could not be true. Suggs reasons that, at trial, Smith testified that he was given hair samples from Debbie McKenzie's body and from Suggs, and he compared those samples with hair found on a tennis shoe belonging to Suggs. Smith opined that the hair found on Suggs's shoe was Debbie's. However, Suggs points out that, on cross-examination, Smith agreed with the proposition that "the scientific field cannot prove the hair came from a certain individual to the exclusion of any other person." In view of this response on cross-examination, Suggs contends Smith's earlier opinion should have been excluded.

■■ It is well settled that the determination of the qualifications of an expert witness lies within the discretion of the trial court, and the trial court's decision will not be reversed unless that discretion has been abused. *Dixon* v. *State*, 268 Ark. 471, 597 S.W.2d 77 (1980). Once an expert witness is qualified, the weakness in the factual underpinning of the expert's opinion may be developed upon cross-examination and such weakness goes to the weight and credibility of the expert's testimony. *Polk* v. *Ford Motor Co.*, 529 F.2d 259 (8th Cir.), cert. denied, 426 U.S. 907 (1976). And where the testimony shows a questionable basis for the opinion of the expert, the issue becomes one of credibility for the factfinder, rather than a question of law for the court. *Arkansas State Highway Comm'n* v. *First Pyramid Life Ins. Co. of America*, 265 Ark. 417, 579 S.W.2d 587 (1979).

■ Here, the trial court correctly qualified Smith as an expert concerning the field of trace evidence. Smith testified that, as a criminalist, he deals with scientific evidence and traces evidence or residues recovered at a crime scene which includes such things as hair. His training, Smith said, included specialized areas of hair analysis, and he obtained such training and experience with the FBI lab and St. Louis Metropolitan Police lab. He also related his broader work and training, obtained in the trace evi-

dence field. After having been qualified as an expert, Smith went into considerable detail concerning the analysis performed on Suggs's and Debbie McKenzie's hair samples and how those samples were analyzed and compared with the hair found on Suggs's tennis shoe. Suggs's counsel then thoroughly cross-examined Smith concerning his training and about the tests performed and, as discussed above, counsel further questioned Smith as to whether Smith could actually prove the hair on Suggs's shoe belonged to Debbie. Both state and defense counsel did an excellent job of pinpointing the strengths and weaknesses of Smith's opinion evidence; once done, however, it became the jury's duty to determine the weight and credibility to be given Smith's testimony. In sum, the court did not err in allowing Smith's testimony.

Suggs's final argument concerns testimony given by state witness Carolyn Hudnall. Hudnall said that she saw Suggs several times at Debbie McKenzie's workplace, and those occasions occurred a few days before Debbie's murder. Suggs asked Debbie for a date, and she told him no. Hudnall said that Suggs asked a second time, and Debbie became agitated and told him she already had a boyfriend. Suggs objected to Hudnall's testimony as being inadmissible hearsay. He claims the prosecution elicited this testimony to establish Suggs's motive in killing Debbie. The trial court overruled Suggs's objection.

■ Even if the trial court's ruling was error, it was harmless. This court has held that where hearsay evidence is improperly admitted, but the same evidence is properly admitted through another source, there is no reversible error. *Caldwell* v. *State*, 319 Ark. 243, 891 S.W.2d 42 (1995); *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988). That is the situation here. Four other state witnesses testified without objection to the same, or even stronger, evidence reflecting that Suggs had harassed Debbie shortly before her death with contacts at work and at home, and she repeatedly rejected his offers. Patricia Parker and Elsie Mills testified that Suggs bothered Debbie at work and she would not talk to him. Mills said she was at Debbie's home, and answered numerous calls from Suggs, but Debbie would not take the calls. Similar testimony was given by another state witness, Linda Malone. Debbie's brother, Lee Lemmon, testified Debbie had called and asked him to her house because Suggs was beating and kick-

ing on her door in an attempt to break in. Lemmon said that Debbie appeared frightened and nervous.

After careful review of the record and arguments of counsel, we hold no reversible error occurred. Therefore, we affirm.