Terrence D. BOX v. STATE of Arkansas

CR 01-698                                      71 S.W.3d 552

Supreme Court of Arkansas
Opinion delivered April 4, 2002

*James H. Phillips*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Terrence D. Box was convicted of aggravated robbery and first-degree battery, and sentenced to twenty-five and ten years respectively. Box raised four issues on appeal before the court of appeals. He argues that (1) there was insufficient evidence to support the robbery convictions; (2) the trial court erred in forcing him to appear before the jury while dressed in prison garb; (3) the trial court improperly commented on the evidence; and (4) the court erred in admitting a letter and envelope into evidence. The court of appeals affirmed on points (1) and (3), but reversed on the other two issues, holding that the trial court erred in compelling Box to stand trial in prison garb and in admitting a letter and envelope into evidence. *See Box v. State*, 74 Ark. App. 82, 45 S.W.3d 415 (2001). The State petitions us for review, addressing the two points on which the court of appeals reversed. Contrary to Box's assertion, Ark. R. App. P.—Crim. 3(c) is inapplicable as this is not an appeal by the State. We granted review under Ark. Sup. Ct. R. 2-4(c) and address the two points on which the court of appeals reversed. We reverse the trial court on the prison-garb issue, and affirm the trial court on the admission of the letter and envelope into evidence.

We need not address the other issues. We agree with the court of appeals in holding that there was sufficient evidence to support Box's robbery conviction and that the trial court did not improperly comment on the evidence.

*Facts*

This case arises from a robbery of the Triple D. Liquor Store in downtown Dumas. The first issue in this case is whether Box waived his right to appear before the jury dressed in civilian clothing. At the time of his trial in the present case, Box was incarcerated on other convictions in the Arkansas Department of Correction. Box had been told by his attorney that he needed to make the necessary arrangements to have civilian clothing present at the courthouse to wear during trial. Box indicated he could arrange this. Box then got a commitment from his parents that they would have his civilian clothes at the courthouse for him to wear during his trial.

However, when Box arrived at the courthouse, his parents were not there, and he had no civilian clothes to wear. He was dressed in the white uniform of the Arkansas Department of Correction. Before Box was brought into the courtroom, the fact that Box was dressed in prison garb was brought to the trial court's attention by the sheriff's department. The State's attorney also raised the issue with the Court. The trial court then called in defense counsel and affirmed that Box had made arrangements for his parents to deliver his civilian clothing to the courthouse. The trial court concluded that Box had his chance, and by not making successful arrangements, he had waived his right to be tried in civilian clothing. The trial court ordered Box brought to the courtroom, and he appeared in front of the venire panel in his white Arkansas Department of Correction uniform. Shortly thereafter, Box's parents arrived with the clothing, and Box was allowed to change. The trial was then completed.

The second issue involves admission of a letter and envelope that robbery victim Tommy Cantrell received. Cantrell testified that he received the letter after the robbery, that it had a Dermott postmark, and that it appeared to say "Correctional" on the envelope. The letter was unsigned, and upon its mention, defense counsel objected on the basis of authentication. The trial court overruled the objection finding the marks on the envelope and the content of the letter identified Box as the author. The letter began, "This is Terrance Box i just wont you to know. . . ."

## Prison Garb

We first note that all the facts regarding the matters immediately preceding trial were not put on the record; however, there is a sufficient record to recognize that Box was trying to obtain a continuance or a delay so he could get civilian clothing. Box arrived at the courthouse for trial in his white Arkansas Department of Correction uniform, and the sheriff's department went to the trial judge to tell him this. The trial court was unwilling to entertain any request for time to get proper clothing. The trial court concluded that Box had waived his right to appear in street clothes because he failed to timely procure any and ordered him brought into the courtroom and into the presence of the venire panel. We hold Box did not waive his right to appear in street clothes. This is apparent when the events and discussion in the trial court that day are considered. We note that the prosecutor also brought this matter to the trial court's attention and that the trial court advised both attorneys that he would allow defense counsel to make his motions "later on." Thereafter, between the court's *voir dire* and counsel's *voir dire*, the following occurred:

DEFENSE COUNSEL: Okay. Secondly, Mr. Box is present in his jail garb, his coveralls. The coveralls are white, which is symbolic of an ADC prisoner. Mr. Box was transported earlier this week to Diagnostic Center in Pine Bluff to serve some time on his revocation. Since he has been brought back, he is being incarcerated in the ADC section of the detention center, which is a white coverall section.

Now, we're dealing with a Delta County jury pool, the jury pool is — it includes persons of law enforcement nature, by law enforcement affiliation, and in fact quite a few prison employees are in the jury pool. Anybody seeing Mr. Box here today in ADC garb should understand that he has a prior conviction. That, alone is prejudicial.

I met with Mr. Box last week at ADC — excuse me, at Delta Regional Center. I informed him that he would have to be here in private, civilian clothes, personal clothing. He told me he had some he could wear that he'd been arrested in, and that he would contact his parents to bring him some clothing for the trial today; however, it has not been supplied, and he's still in court in white prison garb, Your Honor, and it's just an inference that he has been convicted before, that he is in white prison garb, rather than county garb.

. . .

THE COURT: Now, here's the situation the court's put in. Before Mr. Box was brought up the stairs, I asked Mr. Potts [defense counsel] if he had discussed this matter with Mr. Box about wearing civilian clothes, if those were available. He said he had. Mr. Box showed up from the regional jail without any. None had been supplied over to the sheriff's office. Is that correct, Sheriff?

SHERIFF: That's correct.

THE COURT: For him to change into. He had been given that opportunity. It's the defendant's obligation, in my opinion, to have those available, unless it's impossible. It's not been shown to have been impossible. I could have delayed this matter, but I don't think I'm required to delay this matter to search down and hunt for Mr. Box some clothes that he wants to wear. I don't think that's the court's obligation, *and the motion is denied in that regard.* That was his choice as far as I'm concerned. He's waived any complaint about it. (Emphasis added.)

DEFENSE COUNSEL: Your honor, I would make one additional point on that, is that he was not arrested in the garb he's wearing today, that somewhere there's civilian clothes available that he has been locked up and arrested in, and I would have presumed that. . .

THE COURT: It's not been shown that those are unavailable, and additionally, you said that his parents were going to have some here. They haven't done that. I don't know where they are, but again, I'm not going to delay this thing for you to find out, or for me to find out. It's his responsibility. I've got an obligation to move this case along, and that's what I'm trying to do.

The court then proceeded to try Box. What is readily apparent from the above discussion is that Box's attorney tried to delay the trial until Box could be dressed in civilian clothing, but the court expressly denied his motion.

■ ■ There cannot be any doubt that appellant had a right to appear in civilian clothing. *Miller v. State*, 249 Ark. 3, 457 S.W.2d 848 (1970). In *Miller*, we adopted the rule then held by the majority of States that "absent a waiver accused should not be forced to trial in prison garb." *Miller*, 249 Ark. at 5. This was and remains consistent with Article 2, Section 8, of the Arkansas Constitution. Six years later, the United States Supreme Court noted this court's opinion in *Miller* with approval and adopted a somewhat similar rule in *Estelle v. Williams*, 425 U.S. 501 (1976). The holding of the U.S. Supreme Court in *Estelle* was that under the Fourteenth Amendment, a defendant's constitutional rights were violated when he was compelled to wear identifiable prison clothing. The U.S. Supreme Court's decision in *Estelle* was first noted by this court in *Holloway, Welch & Campbell v. State*, 260 Ark. 250, 539 S.W.2d 435 (1976), *rev'd on other grounds, Holloway v. Arkansas*, 435 U.S. 475 (1978). We have never altered our original holding in *Miller*. The court of appeals in *Washington v. State*, 6 Ark.

App. 23, 637 S.W.2d 614 (1982) stated, "the rule in *Estelle, supra*, was adopted by the Arkansas Supreme Court in *Holloway, Welch and Campbell v. State*, 260 Ark. 250, 539 S.W.2d 435 (1976)." The court of appeals is in error. In *Holloway*, this court noted *Estelle*, but did not overrule *Miller*. This court held in *Miller, supra*, in 1970 that absent a waiver, a criminal defendant may not be tried in prison garb. The rule in Arkansas remains that the accused may not be forced to trial in prison garb absent a waiver. We are bound to follow our prior case law under the doctrine of *stare decisis*. *Aka v. Jefferson Hosp. Ass'n, Inc.* 344 Ark. 627, 42 S.W.3d 508 (2001). The court of appeals has cited to *Estelle* in its opinions. However, greater protection is afforded under our State constitution than that set out in the rule in *Estelle*. The rule in Arkansas is set out in *Miller, supra*, and that is the law the court of appeals is bound to follow. As the court of appeals correctly stated recently, "More importantly, any inconsistency between precedents set by the supreme court and the court of appeals must be resolved in favor of the precedent announced by the supreme court, and it is well established that this court is without authority to overrule a decision of the supreme court." *Brown v. State*, 63 Ark. App. 38, 44, 972 S.W.2d 956 (1998).

▪ When someone is tried in prison garb, his or her right to a fair trial is placed in serious jeopardy. In *Clemmons v. State*, 303 Ark. 265, 795 S.W.2d 927 (1990), this court stated:

> Central to the issue of a fair trial is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978).

When someone appears in prison garb, the decision of the jury may well be based upon his or her prior conviction or status as someone held in custody. In *Estelle, supra*, the U.S. Supreme Court noted that when an accused is forced to wear prison garb, the jury might be prejudiced, and that the wearing of such attire serves no useful State purpose. *Clemmons, supra*. This is because once the jury sees the defendant in clothing implying he is a criminal, they may assume he is, and the jury will be biased. The dan-

ger in this case is greater than where a prisoner is seen in county-jail clothing. Here, Box appeared in the white uniform of an Arkansas Department of Correction inmate, which showed he was a convicted and incarcerated felon. It might be tempting to enter into argument about whether an average venire member would know the difference in prisoner clothing between that worn by a county inmate and that worn in prison, but such an argument begs the question and discounts the importance of the concern at issue, that of a fair trial. Someone who comes into court in Arkansas in a prison uniform may well be recognized as a sentenced convicted felon, and that is the danger. There is nothing to be gained by trying someone in prison garb. Here, the motivation was to accommodate the jury and save time.

▮ However, before we can delve further, we must first address the issue of whether Box preserved the issue. Box clearly brought to the court's attention that he did not desire to be tried in his white prison uniform. He was asserting his right to be tried in civilian clothing, and he had made arrangements for his parents to deliver his civilian clothing to the courthouse for him to wear during his trial. The State notes there was no motion for a mistrial. None was made. None was needed. A mistrial discharges the jury. *Woods v. State*, 287 Ark. 212, 697 S.W.2d 890 (1985); *Atkins v. State*, 16 Ark. 568 (1855). Here, no jury had been chosen or charged. There was no reason to bring a motion for mistrial because there was nothing as yet that could be mistried. The relief sought is obvious. Box moved for a continuance to allow time to obtain civilian clothing. Without question the issue is preserved for review.

▮ We also note that the trial court overruled Box's objection to being tried in prison garb in denying the motion for a continuance. The trial court ruled and was moving forward with Box in his prison uniform. Even if the jury had been sworn and a motion for mistrial could have been brought, to require Box to move for a mistrial after the trial court had ruled on his objection and motion for a continuance would be to require a vain and useless act. *Logan v. State* , 299 Ark. 266, 773 S.W.2d 413 (1989). The law does not require vain and useless acts. *Noble v. State*, 326

Ark. 462, 932 S.W.2d 752(1996); *State v. Wilhite*, 211 Ark. 1065, 204 S.W.2d 562 (1947).

■ ■ It is clear the prejudice at issue here attaches from the potential jurors seeing Box. *Miller, supra; Estelle, supra.* A defendant is "entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man." *Miller*, 249 Ark. at 6 (quoting 21 AM. JUR. 2d *Criminal Law* § 239). The jurors saw Box when he was brought up before the pretrial proceedings began. The proper method to raise the issue was to bring the matter to the court's attention, as was done, and to seek a continuance. The trial had not commenced. The jury had not been sworn. *Phillips v. State*, 338 Ark. 209, 992 S.W.2d 86 (1999). The solution was simply to bring in a fresh jury panel once Box was in civilian clothing.

The facts in this case do not match any of our prior cases on prison garb. In *Holloway, supra*, this court found there was a waiver where clothing was offered to the criminal defendants, and they declined to change. In *Young v. State*, 283 Ark. 435, 678 S.W.2d 435 (1984), this court found a criminal defendant waived his right against being tried in prison clothing by failing to object. The court in *Young* noted the right not to be attired in prison clothing can be waived.

■ ■ The burden is on the State to establish that appellant waived his rights, and all doubts must be resolved in favor of the individual rights and constitutional safeguards. *Bradford v. State*, 306 Ark. 590, 815 S.W.2d 947 (1991); *Sutton v. State*, 262 Ark. 492, 559 S.W.2d 16 (1977); *Smith v. State*, 240 Ark. 726, 410 S.W.2d 749 (1966). The term "waiver" is defined as the "renunciation, repudiation, abandonment, or surrender of some claim, right or privilege, or of the opportunity to take advantage of some claim, right, irregularity or wrong." *Webb v. State*, 318 Ark. 581, 886 S.W.2d 624 (1994) (citing *Black's Law Dictionary* 1580 (6th Ed. 1990)). The record is devoid of any such evidence.

■ ■ Here, Box clearly did not waive his right to appear in civilian clothing. Box asserted his right to appear in civilian clothing by arranging to have his parents deliver civilian clothing to the courthouse before trial, and this was certainly cor-

roborated by the arrival of the clothing shortly after the proceedings began. The findings by the trial court that something that was not within Box's control, the late delivery of his civilian clothing contrary to Box's arrangement, amounts to a waiver of Box's right to appear in civilian clothing is error. This is a step we are unwilling to take. The issue was squarely before the trial court, which denied the motion for a continuance to allow Box time to obtain civilian clothing to wear and ordered Box to stand trial in prison clothing. It is true that Box changed once the clothing arrived, but the damage was done. *Suggs v. State*, 322 Ark. 40, 907 S.W.2d 124 (1995). When a criminal defendant is seen by the potential jurors or jurors while in prison garb, his right to a fair trial is placed in serious jeopardy because guilt may well be based upon grounds of official suspicion, indictment, or continued custody. *Clemmons, supra; Miller, supra.* This is apparent in *Suggs, supra*, where we stated simply, "In sum, our review of the record fails to show the jury saw Suggs in prison garb or show it was in any way made aware of his incarceration." *Suggs*, 322 Ark. *at* 42. The dissent also appears to try to argue if there was error it was harmless because the jury was asked if it was prejudiced by having seen Box in prison garb. We also note that whether Box showed prejudice is not at issue. The rule is that absent a waiver, a criminal defendant may not be tried in prison garb. Any resort to harmless error is inapplicable to this case and would avoid addressing the real issue. A waiver is required by the precedent of this court. There was no waiver. The impression the jury received in seeing Box in white Arkansas Department of Correction garb could not be erased by allowing Box to change into civilian clothing and appear for the remainder of the proceedings in civilian clothes. The bell had been rung, and it could not be unrung. We should not sacrifice a fundamental constitutional right — the right to a fair trial — for the sake of expediency. Here, the facts are clear that the right was asserted and denied by the trial court, and the delay the trial court should have granted would have been of a very short duration.

The trial court erred in finding Box had waived his right to be tried in civilian clothing, and the case is reversed and remanded for a new trial on that basis.

*The Letter*

After the robbery, Tommy Cantrell received a letter in the mail with the name of T. Box on the return address. A stamp on the outside showed it came from "Correctional." Inside, it began, "This is Terrance Box i just wont you to know it wasn't me. . . ." Box objected to the introduction of this letter asserting a lack of foundation and lack of authentication. The letter is not signed but, as noted, begins with the assertion that the writer is Box. Within the letter, the writer asserts that he got the camera from Phillip Gober and that he had nothing to do with the robbery. At the time Cantrell received the letter, Box was an inmate in the Department of Correction. Also, the camera was a key piece of evidence connecting Box to the crime and on that basis would have been of great concern to Box and would be a motive for why he wrote the letter. Arkansas Rule of Evidence 901(b)(4) allows authentication by "Appearance, contents, substance, characteristics, internal patterns, or other distinctive characteristics. . . ." Box denied writing the letter. There was no attempt to show that the letter was in Box's handwriting.

On appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion; nor will we reverse absent a showing of prejudice. *Huddleston v. State*, 339 Ark. 266, 5 S.W.3d 46 (1999); *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996); *Vanesch v. State*, 343 Ark. 381, 37 S.W.3d 196 (2001).

The letter states:

> This is Terrance Box i just wont you to know that it wasn't me some body just wont me to take the blame. That camera i bought it from Phillis Golder that is the truth. I got a son just turn 2 year old don't wont to leave him like my daddy left me so please believe me on this one. I sorry for what happen but this is something that i never had nothing to do with it. Deep in your son heart he know that it's not me i pray to God about what I'm going threw wish that he'll take me from this place. I pray everyday that God will let some one see that have nothing to do with that Tom how long you know my grandad Topcat the one who ride the bike i got so much respect to do you like that. If you feel

in your heart that you think it was me understand/ All i can do is give you my word so my God bless you bye.

You know my mom Darlen every time she come to your store i be with so i can't do nothing like that.

The letter contains no admission of guilt. In general, it shows Box knew he was suspected and wished to do what he could to convince Tommy Cantrell he was innocent. The most damaging thing about the letter is the mention of the camera found in his girlfriend's apartment; however, in the letter, Box asserts he purchased it from Phillip Gober. Gober was called to testify and testified consistent with the letter that he had found it and sold it to Box. The issue of the camera was not raised for the first time at trial by the letter. The jury knew of the camera and that it had been seized in Box's girlfriend's apartment. That evidence came in by way of the first witness, Michael Donigan of the Dumas Police Department, who testified that the camera was seized at Box's girlfriend's home. The evidence of the camera in the letter was thus not prejudicial and was not needlessly cumulative. Ark. R. Evid. 403.

With respect to how the letter impacted the case, it can be argued that the letter may have benefitted Box in that it brought before the jury evidence of his two-year-old son whom they would deprive of a father if they imprisoned Box, and evidence of what it was like to be incarcerated. This is evidence criminal defendants often try to introduce without success.

To be prejudicial, the letter would have to have some adverse impact on Box in the eyes of the jury. *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). No prejudice was shown. Based upon the arguments presented, we find no basis on which to reverse the trial court's admission of the letter and envelope.

Reversed and remanded.

MICHELLE C. HUFF, SPL. J., joins in this opinion.

ARNOLD, C.J., GLAZE and CORBIN, JJ., dissent.

IMBER, J., not participating.

Tom Glaze, Justice, dissenting. The majority opinion is clearly wrong, thus, I dissent. The controlling rule is found in the case of *Estelle v. Wilkins*, 425 U.S. 501 (1976), where the Court held that, while the State cannot "consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."

Here, the evidence clearly shows the trial judge did not *compel* Box to be tried before a jury while Box was in prison garb. In fact, it is *undisputed* that, before his counsel began conducting his *voir dire* of the jury pool and his jury trial, Box, indeed, was in civilian clothes. How then, the reader might ask, do we find ourselves dealing with the prison–garb issue? Good question.

The record reflects that the trial judge acted within his discretion when he required the parties to proceed with *voir dire* and the trial. On the day trial was scheduled, the State, not Box or his counsel, informed the trial judge that Box was in prison clothes. In response, defense counsel said that, one week prior to the trial date, he had instructed Box to make arrangements for obtaining civilian clothes, and Box had told his attorney that Box had private, civilian clothes in which he had been arrested. At the beginning of *voir dire* on the day of trial, neither Box nor his attorney gave the trial judge any excuse or reason why he was not wearing those clothes left at prison or why he did not request those clothes from prison personnel.

Also, it was only at this stage of trial that the trial judge became aware through Box's counsel that Box had asked his parents to bring civilian clothes for the trial. When they failed to show, neither Box nor his counsel gave an excuse why Box's parents were not present when the trial proceedings commenced; nor did Box or his attorney offer any prospects as to when (or whether, for that matter) the parents might appear. With this lack of information, the trial judge did all he could — he denied any delay. Contrary to the majority opinion, the trial judge, when deciding the trial should continue, did not know a continuance

would be "of very short duration" because no one told him when or if Box's parents would appear. Clearly, in these circumstances, the trial judge did not abuse his discretion in requiring the parties to proceed to trial.

I also point out that, when Box's parents did finally show up, the trial judge promptly granted Box's request to get into his civilian clothes. Afterwards, defense counsel proceeded with his *voir dire* of the jury panel and later participated in selecting the jury.[1] In sum, the trial judge did not compel Box to be tried in prison clothes — he permitted Box to change into civilian clothes as soon as the judge learned the clothes were available.

Box (and the majority opinion) relies on the case of *Miller v. State*, 249 Ark. 3, 457 S.W.2d 848 (1970), where this court held it was reversible error to compel Miller to be tried before a jury when Miller was in prison clothes. There, Miller had not been afforded any opportunity to obtain civilian clothes; nonetheless, the trial judge compelled him to go to trial. Unlike in *Miller*, Box had plenty of time to acquire civilian clothes in a timely fashion, but failed to do so and provided no reason for having failed to do so. The majority opinion in its discussion of *Miller* makes reference to Ark. Const. art. 2, § 8, but the holding in *Miller* is not premised on the Arkansas Constitution, but instead, on common law. Neither Box nor the State argues the Arkansas Constitution in this appeal. Still, the majority plunges onward, trying to draw a distinction between *Miller* and *Estelle* when none exists. The majority asserts that the court in *Holloway, Welch & Campbell v. State*, 260 Ark. 250, 539 S.W.2d 435 (1976), "noted" *Estelle*, but did not overrule *Miller*. There was no need to overrule *Miller*, as the rules in both cases are not inconsistent. Further, the majority mistakenly asserts our court has never adopted this rule in *Estelle*. *See, e.g., Holloway, supra.* One merely needs to read this court's opinions in *Young v. State*, 283 Ark. 435, 678 S.W.2d 329 (1984),

---

[1] During their respective *voir dires*, both the prosecutor and defense counsel reminded the jury of the presumption of innocence Box enjoyed prior to trial. In fact, the State specifically asked if "anybody [was] thinking, right now, because he sits here today charged with these crimes, that Mr. Box is guilty." No juror responded, and on more pointed, individual questioning, at least three jurors specifically indicated that they had "no problem" with the presumption of Box's innocence.

*Clemmons v. State*, 303 Ark. 265, 795 S.W.2d 927 (1990), and *Tucker v. State*, 336 Ark. 244, 9983 S.W.2d 956 (1999), to be reassured that Arkansas has adopted the *Estelle* rule. *See also Washington v. State*, 6 Ark. App. 23, 637 S.W.2d 614 (1982), where the court of appeals first correctly recognized our court adopted the rule in *Estelle*. Both *Miller* and *Estelle* stand for the proposition that a trial judge cannot compel a defendant to be tried in prison garb, and both provide that a defendant can waive that right — in *Miller* that right was not waived, but here, Box waived his right by not timely obtaining civilian clothes when he was given ample time to do so.

Again, to summarize, Box was in civilian clothes at the time his counsel *voir dired* the jury panel, after the jury was selected, and when he was tried. Thus, the only issue to consider is whether Box was prejudiced by the "possibility" the jurors saw Box in prison garb during the time the State first *voir dired* the jury pool. Even at that early stage of the trial, the trial judge asked defense counsel if he wanted the trial judge to *voir dire* the jury panel to determine if the jurors, having seen Box in prison garb, would be able to still render a fair decision. Box, however, claimed that questioning the panel on this point, alone, would be prejudicial.

Of course, our law is well settled that Arkansas does not recognize plain error. This court, in fact, has held that it is not prejudicial *per se* when a defendant is brought into a courtroom in prison clothes, handcuffed, or even legcuffed. *Lynch v. State*, 315 Ark. 47, 863 S.W.2d 834 (1993). Moreover, while the *Estelle* court recognized the potentially prejudicial effect of a prison uniform, that Court did not rule the practice inherently prejudicial absent the element of compulsion. *See Young v. State*, 283 Ark. 435, 678 S.W.2d 329 (1984). The instant case is much like *Young*, where the defendant Young made no objection throughout the jury selection process and not until the jury was seated did he object. The *Young* court concluded as follows:

> [A]lthough [Young] argues that he had no other clothes available to him, he made no showing whatsoever that he was forced to wear the prison attire, that a continuance was requested or that any request for other clothes was denied or that any such request was ever made. And as pointed out in *Estelle*, there was no duty

on the part of the trial court to make any inquiry. "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of the trial judges and counsel in our legal system." *Estelle* at 512.

*Young*, 283 Ark. at 437. Here, Box never made an effort to show any prejudice ensued because some jurors might have seen him in prison garb at the initial part of the *voir dire* of the jury pool. Based on the record as discussed above, Box must take the responsibility for any delay in acquiring civilian clothes, but also, once jurors saw him briefly in prison garb, it was his burden to show this somehow tainted the jury later chosen to decide his case. He had the opportunity during *voir dire* to question potential jurors about what, if any, impact his clothing might have had on them, but he chose not to exercise this option. He rejected the trial judge's invitation to question the jury panel on the prison-garb issue. On this point, the majority opinion alludes to the metaphor that once Box was seen in prison clothes that "the bell had been rung, and it could not be unrung." This is an unfortunate misuse of a good figure of speech, which is often employed when a jury has heard inadmissible and prejudicial evidence. Obviously, the time to challenge a juror or jury panel is at *voir dire* and prior to those jurors being selected to serve on the jury selected to try a defendant's case. This principle is so fundamental in our jurisprudence, no citation is required.

In conclusion, the record bears out that Box was properly tried in clothes of his choice and received a fair trial while wearing them. It is also clear that he made no attempt to show any juror was prejudiced against him because they may have sen him in prison garb — a situation which he, himself, had a hand in creating. I would affirm the trial judge.

ARNOLD, C.J., joins this dissent.