Detrick Deshawn CROSTON *v.* STATE of Arkansas

CA CR 05-881                                        234 S.W.3d 909

Court of Appeals of Arkansas
Opinion delivered May 3, 2006

*Lesley E. Freeman,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Clayton K. Hodges,* Ass't Att'y Gen., for appellee.

A NDREE LAYTON ROAF, Judge. Appellant Detrick Croston was found guilty of two counts of forgery in the second degree by a jury and sentenced to nine years' imprisonment. Croston now argues on appeal that the trial court erred (1) in requiring him to wear prison attire during his trial; and (2) in allowing the State to introduce evidence of incriminating statements he made to Bailiff Art Noel. We affirm.

On November 24, 2003, Croston was charged with two counts of forgery in the second degree. Wal-Mart security cameras recorded Croston entering the store and handing a cashier a check that belonged to Thomas Green, whose home had recently been burglarized.

Prior to his arrival at court for trial, Croston was offered civilian clothing for his court appearance, but he refused to wear it. At a hearing before the trial judge, Croston interjected that he did not want the clothes because they were too small. The trial court found that Croston was offered an opportunity to change clothes and refused; thus, he would be required to stand trial while wearing the prison attire. Furthermore, the trial court allowed the State to introduce evidence that Detective Williams and Bailiff Noel were familiar with Croston and were able to identify him from the Wal-Mart security tape; however, they could not mention that they knew him from past arrests or juvenile court.

At the subsequent trial, Bailiff Noel testified that while escorting Croston to jail he said to Croston, "I've known you for four years and I saw your face on that [surveillance] video, Detrick, and I know it was you," and that Croston replied, "you may know my mannerisms but no one else will."

On appeal, Croston first argues that the trial court erred by requiring him to appear for trial in jail attire. A criminal defendant does not have a constitutional right to be provided clothing of a particular style; the Constitution merely prohibits compelling a criminal defendant to appear in "clearly identifiable" jail clothing. *See United States v. Henry*, 47 F.3d 17 (2d Cir. 1995) (*cert. denied* 515 U.S. 1110 (1995)); *see also United States v. Martin*, 964 F.2d 714 (7th Cir. 1992). Absent a waiver an accused should not be forced to stand trial in distinct and identifiable prison garb. *Box v. State*, 348 Ark. 116, 123, 71 S.W.3d 552, 556 (2002). A waiver is present where civilian clothing is offered to the defendant and he refuses to change. *Id.*; *e.g.*, *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003); *Holloway v. State*, 260 Ark. 250, 539 S.W.2d 435 (1976) (holding that the defendants waived their right not to be tried in prison garb where they twice rejected the trial court's offer to change clothes).

The State has the burden of establishing that the accused has waived his right not to be tried in prison garb, and all doubts must be resolved in favor of the individual rights and constitutional safeguards. *Box, supra*. Furthermore, where an accused is tried in prison garb, his right to a fair trial is placed in serious jeopardy; thus the need to accommodate the jury and to save time cannot be paramount. *Id.* Finally, grounds for reversal are present where the defendant is required, against his will, to wear identifiable prison attire during trial, notwithstanding a lack of proof that he suffered prejudice. *Id.*

In *Washington v. State*, 6 Ark. App. 23, 637 S.W.2d 614 (1982), we held that the defendant waived his right not to be tried in prison attire, where he told the bailiff that he did not want to change before the trial. Later, when asked by the trial judge if he wanted to wear the orange prison jumpsuit, the defendant replied, "wear the jumpsuit."

Here, the State put on evidence of Croston's waiver through testimony by the bailiff, Art Noel. The testimony and colloquy concerning the waiver in its entirety is as follows:

> STATE: Additionally it is my understanding that the bailiff went to pick up Mr. Croston. They had civilian clothes ready for him over there. He refused to change clothes. He informed them that he wasn't coming to court; they could issue a failure to appear. Basically he said, he did not want to participate in our activities

today. They brought him over in shackles and jail attire and I would ask that he remain that way. He was afforded an opportunity to come over in civilian clothes. He has chosen not to do that. We have a jury out there and we are ready to go.

DEFENSE COUNSEL: We object to Mr. Croston appearing in jail attire and shackles. We would like to have the Court explain to him that he, at least, has the option of reviewing his thoughts along those lines.

COURT: In regard to the jail attire matter, it is my understanding that Mr. Croston was provided with civilian clothes and refused those clothes.

STATE: The bailiff is here if you would like to hear testimony about what actually occurred.

BAILIFF NOEL: At some point this morning Mr. Croston was afforded the opportunity to dress in civilian clothing. They were not his clothes, they were provided by the 309s that are here. According to Sergeant Mc-Coombs, Mr. Croston stated that it was not his attire and he was not going to wear it and that he was not coming to court just give him a failure to appear. So, he refused to put on the civilian clothes and gave the jailer notice he did not want to come to court. I have not had any problem getting him to court this morning, he has complied. He told me he wasn't coming over and that he did not want to be in front of a jury without his clothes and that if I was going to make him come it would require force. I replied that if force was needed then it would be used and he did not want to go that route. He was afforded the opportunity to wear civilian clothes.

CROSTON: The clothes were too small.

COURT: He at first refused to come to court and even offered to have a failure to appear issued?

NOEL: Yes.

COURT: Does counsel have any questions for Officer Noel?

DEFENSE COUNSEL: Again, I would request that Court to allow Mr. Croston to reconsider his demand and put on civilian clothing. I think he surely realizes it's not going to help the situation to be here in jail attire.

COURT: Does the State have any argument?

STATE: We have a jury sitting out there and he has been given a chance. He knows what is going on and this is his third jury trial. The defendant cannot cause his own delay or mistrial.

COURT: I think he has been afforded the opportunity at 8:30 this morning and he turned the opportunity down and voiced concerns that he did not want to come at all. He overcame his refusal to come because he is here. At this point in time he will go to trial in jail attire. You are talking about an hour delay by the time you get back over and given the fact that Mr. Croston has been down this road before at least three other times, he is well aware of how it operates. At this point in time he will go to trial in jail attire. He refused to put on civilian clothes when offered prior to arriving at court so he will go to trial in his jail attire.

CROSTON: They were two sizes too small.

■    After the State put on evidence of Croston's refusal to change into the civilian clothing provided to him, Croston's counsel presented no evidence to dispute the refusal. While Croston's counsel asked the trial court to "explain" to Croston that he should "review his thoughts along those lines" and to allow Croston to "reconsider his demand" and put on civilian clothing, he did not request a continuance to obtain replacement clothing, or, as in *Box, supra*, elicit any testimony or make any argument regarding the clothing provided to Croston, whether it was appropriate for trial, whether alternate clothing was either available or on the way, or where it would be coming from. Croston's ambiguous interjections neither constitute evidence nor indicate the desire on his part to change his mind even if they are considered as such. Here, the State put forth evidence of a waiver by Croston, and counsel failed to present any evidence or even make an argument that disputed the waiver.

Croston also argues that the trial court erred in allowing the State to introduce evidence of incriminating statements made by him to Bailiff Noel, in violation of rights secured to him under the federal Constitution. As an introductory matter, Croston's objection to the trial court did not include a claim of violation of his Fifth, Sixth, and Fourteenth Amendment rights or that he was interrogated in the absence of counsel by Bailiff Noel. Croston merely objected to the officers testifying as to how they came to know him. Croston did not object to the testimony that was later given by Bailiff Noel in regard to his incriminating statements.

It is well settled that the appellate courts will not hear arguments or errors, even constitutional ones, which were not raised at the trial court level by means of a timely, specific objection. *Nooner v. State*, 339 Ark. 253, 4 S.W.3d 497 (1999); *Ussery v. State*, 308 Ark. 67, 822 S.W.2d 848 (1992); *McGhee v. State*, 82 Ark. App. 105, 112 S.W.3d 367 (2003) . Because Croston did not make a timely specific objection as to the introduction of the incriminating statements made to Bailiff Noel in absence of counsel, this argument was not preserved for our review. Therefore, we cannot consider this argument on its merits.

Affirmed.

GLOVER, VAUGHT, and CRABTREE, JJ., agree.

HART and BIRD, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. I compliment the majority's very even-handed recitation of the facts in this case and thorough citation of the applicable law. I part company only with their conclusion, which emerges like an ending from an O. Henry short story, that Croston "waived" his right not to appear in jail clothing. The majority does not satisfactorily explain how an unequivocal objection on the record by Croston's trial counsel, testimony from the State's only witness that Croston stated that he would accept a "failure to appear" rather than face the jury in the clothing the jailers offered, and Croston's own interjection that the proffered clothing was "too small" constitute a waiver.

In *Box v. State*, 348 Ark. 116, 71 S.W.3d 552 (2002), the supreme court noted that the burden is on the State to establish that appellant waived his rights, and all doubts must be resolved in favor of the individual rights and constitutional safeguards. *Id.*(Citing *Bradford v. State*, 306 Ark. 590, 815 S.W.2d 947 (1991)).

Further, it noted that the term "waiver" is defined as the "renunciation, repudiation, abandonment, or surrender of some claim, right or privilege, or of the opportunity to take advantage of some claim, right, irregularity or wrong." Here, it is apparent from the record that Croston did not wish to be tried in prison clothing and that he was merely objecting to the clothing that was offered to him. Under these facts, it is clear that the State failed to prove that Croston waived his right to be tried in civilian clothes.

The authority that the majority cites only bolsters my conclusion that they simply got it wrong. In *Holloway v. State*, 260 Ark. 250, 539 S.W.2d 435 (1976)(*rev'd on other grounds Holloway v. Arkansas*, 435 U.S. 475 (1978)), the appellants *twice* rejected the trial court's offer to allow them to change clothes. In *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003), not only did the appellant waive his right to appear in street clothes *on the record*, he "expressly requested to stay in jail togs." Finally, in *Washington v. State*, 6 Ark. App. 23, 637 S.W.2d 614 (1982), the appellant was asked by the judge if he wanted to wear the clothing that he was arrested in or the prison jumpsuit, and the appellant answered "wear the jumpsuit." In the instant case, the trial court did not inquire of Croston his reasons for rejecting the institutional clothing that the jailers were seeking to provide him with. I submit that not asking Croston on the record whether he was waiving his right to appear in civilian clothing, the procedure approved of by our supreme court in *Holloway* and *Newman* and this court in *Washington*, constitutes reversible error.

The majority does not explain, and I cannot fathom why the right to a fair trial was so easily lost by Mr. Croston. It is well settled that a person may waive his constitutional rights, but, that waiver must be knowing, intentional, and unambiguous. For instance, the right to a jury trial may be waived, but Rule 31.2 of the Arkansas Rules of Criminal Procedure requires that, if a defendant wishes to waive his right to trial by jury, he must do so personally, either in writing or in open court. Similarly, a criminal defendant may waive his right to counsel and represent himself; we require however, that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Mayo v. State*, 336 Ark. 275, 984 S.W.2d 801 (1999). Furthermore, our supreme court requires a specific warning of the dangers and disadvantages of self-representation, or

a record showing that the defendant possessed such required knowledge from other sources, to establish the validity of a waiver. *Bledsoe v. State*, 337 Ark. 403, 989 S.W.2d 510 (1999). The waiver of a defendant's right against self-incrimination has long required unambiguous proof that the defendant was apprised of these rights and knowingly and intelligently waived them. *Miranda v. Arizona*, 384 U.S. 436 (1966). Moreover, the statements arising from custodial interrogation are presumed to be involuntary, and like the right not to appear in jail clothing, the burden is on the State to prove that a defendant knowingly and intelligently waived his privilege against self-incrimination and his right to an attorney, and that he voluntarily made the statement. *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 (1988).

Prior to today's decision, the right to a fair trial afforded by prohibiting the State from trying an individual in jail clothing was protected by the courts of this state in a manner similar to the way that we still protect the right to a jury trial, the right to counsel, and the right against self-incrimination.

I am authorized by Judge BIRD to state that he joins in this dissent.